Karra J. Porter, #5223
   Karra.Porter@chrisjen.com
Anna P. Christiansen, #17518
   Anna.Christiansen@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111-2047
Telephone:  (801) 323-5000
Facsimile:  (801) 355-3472
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DAWN HEPIKIYA MEDINA, JUSTIN HORTON, MADELAINE THOMPSON,** on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>**THE HON. ANN MARIE MCIFF ALLEN**, and **THE HON. JEREMIAH HUMES,** in their official capacities,<br><br>        Defendants. | **COMPLAINT**<br><br>**(Class Action)**<br><br><br>Case No. 4:21-cv-00102-DN<br><br>Judge David Nuffer |

Plaintiffs, by and through counsel, hereby complain against defendant as follows:

### INTRODUCTION

In Utah, hundreds of people are detained in county jails every day solely because they cannot afford to purchase their liberty.  Named Plaintiffs are currently confined in the Iron, Beaver, and Carbon county jails because they do not have enough money to purchase their pretrial release.

No official has conducted any inquiry into Named Plaintiffs' ability to pay, or made inquiry into or findings concerning alternative conditions of pretrial release or the necessity of pretrial

detention. Because they cannot access the payments Defendants are requiring for their release, presumptively innocent arrestees have been, and will continue to be, detained in the county jails for days, weeks, or months. On behalf of themselves and all others similarly situated, the Named Plaintiffs seek declaratory relief against Defendants.

After a person is arrested without a warrant, she is taken to the corresponding county jail. There, she must await an initial bail determination, which typically occurs within 24 hours.[1] The initial bail determination is a closed proceeding. A magistrate reviews written material provided by law enforcement or a prosecutor. The arrestee is not notified when the bail review will occur, or that it is occurring. She is not appointed counsel or given any opportunity to participate or provide relevant information.

After this closed bail review, an Order to Hold with Bail is issued stating an amount that must be posted for the arrestee to be released. The Order is essentially a template in which limited case-specific information is filled in. No analysis of constitutional factors such as ability to pay is performed, and the Order contains no constitutionally required findings about ability to pay or why alternative conditions of release would not satisfy the government's interests. The Order to Hold with Bail issued as to Named Plaintiff Dawn Medina on September 30, 2021, is typical:

> Based on the affirmation of Justin Bice, the arresting officer, the undersigned magistrate finds that probable cause existed for the arrest without a warrant of Dawn Hepikiya Medina. Dawn Hepikiya Medina may post bail in the amount of $7,000.00.

Arrestees who are unable to pay to secure their release must remain in jail cells for up to six days before an Initial Appearance, which is the first appearance in front of a judicial officer.

---

[1] Jail personnel are not permitted to release the arrestee unless certain circumstances are met, including that law enforcement has not submitted a probable cause statement to a court or magistrate. Utah Code § 77-20-3.2(2).

Those who cannot afford private counsel are not appointed counsel during the initial period of detention, and no lawyer appears with them at the Initial Appearance.

Defendants' practice of requiring people to pay unattainable amounts of money to secure their release is the equivalent of issuing orders of detention against them, but without any of the substantive findings or procedural safeguards constitutionally required for orders of detention. This pretrial detention of poor people has significant detrimental consequences: people lose their jobs, are evicted from their homes, endure separation from their loved ones, and face pressure to plead guilty as soon as possible because that is often the quickest way to terminate their unlawful confinement. Plaintiffs seek an order declaring that this wealth-based detention scheme violates the Fourteenth and Sixth Amendments to the United States Constitution, and that to meet constitutional minima courts must follow (and document) at least these steps:

1. The court must first determine if bail is necessary.

   a. The court must consider the individual circumstances of the arrestee, including

      i. character and ties to the community

      ii. criminal history

      iii. nature of and potential sentence for the alleged offenses

   b. The burden is on the State to prove by clear and convincing evidence that bail is necessary to ensure the arrestee's presence at future court proceedings or to protect the safety of the community, including an alleged victim and the victim's family.  (Stated differently, the presumption is release without monetary condition.)

c.      The court should consider whether release on personal recognizance or subject to nonmonetary conditions would be sufficient to reasonably ensure the purposes of bail are met.

i.      If bail is not necessary to ensure defendant's presence at court proceedings or to ensure safety of community, then release on personal recognizance or nonmonetary condition is appropriate. If bail is not necessary, then any amount of bail is excessive.

ii.      If the court determines that no combination of nonmonetary conditions would be sufficient to reasonably ensure the defendant's appearance or the safety of the community, then the court must determine the amount of bail that is necessary.

2.      If the Court determines that bail, rather than nonmonetary conditions are necessary, then an individualized bail hearing must be held within a reasonable time after arrest for persons who remain in custody. The person must be given notice and permitted to participate, including provision of financial information and assistance of counsel.  At this hearing, the judge must consider

a.      Arrestee's financial resources / financial ability to give bail

b.      Character of arrestee

c.      Nature and circumstances of the offense charged

The judge must state his/her reasons for the bail amount on the record.

## JURISDICTION AND VENUE

1.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, et seq., and the Sixth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Venue in this Court is proper under 28 U.S.C. § 1391.

## PARTIES

3.      Named Plaintiff Dawn Hepikiya Medina is a resident of Iron County.

4.      Named Plaintiff Justin Horton is a resident of Carbon County, Utah.

5.      Named Plaintiff Madelaine Thompson is a resident of Beaver County, Utah.

6.      The Class Members are as defined below.

## DEFENDANTS

7.      Defendants the Hon. Ann Marie McIff Allen and the Hon. Jeremiah Hume are employees of the State of Utah.  At various times, Defendants serve in a capacity as a magistrate in and for the Sixth Judicial District.  Defendants' magistrate duties include making probable cause determinations and initial bail determinations.

8.      Defendants are sued in their capacity as magistrates for declaratory relief only.

9.      Defendants also serve as District Court judges in and for the Fifth and Sixth Judicial District Courts.  Among their duties are to preside over Initial Appearances.

# FACTUAL ALLEGATIONS

**A.    The Named Plaintiffs are in jail because they are unable to pay the financial condition required for their release.**

10.    Plaintiff Dawn Hepikiya Medina is a 43-year-old native Utahn of Sioux and Piute descent. She has been incarcerated in the Iron County Jail since September 30.

11.    Dawn was arrested without a warrant on September 30, 2021, at approximately 9:46 a.m.  As alleged in the probable cause statement, Dawn had attempted to shoplift various items from a grocery store from which she had previously been trespassed.  The probable cause statement alleges that Dawn had a previous burglary conviction, which "enhances the theft to a felony."

12.    At approximately 3:14 p.m. on September 30, Defendant Allen issued an Order to Hold with Bail.  The Order stated, in pertinent part:

> Based on the affirmation of Justin Bice, the arresting officer, the undersigned magistrate finds that probable cause existed for the arrest without a warrant of Dawn Hepikiya Medina.  Dawn Hepikiya Medina may post bail in the amount of $7,000.00.
>
> 76-6-412(1)(B)(IV)    THEFT – PREV FELONY CONVICTION OF SUB (1)(B)(II)(A-C)
> 76-6-206 CRIMINAL TRESPASS
>
> If Dawn Hepikiya Medina posts bail as stated above, Dawn Hepikiya Medina is hereby ordered to be released subject to the following conditions:
>
> - Report your contact information and any change in address, phone or email to the Court and your attorney within 1 business day of the change
> - Appear in court when required
> - Avoid contact with the victim(s) of the alleged offense
> - Commit no new offenses during the period of release

13.    Dawn has six children, two of whom are still minors and rely on her for support. These children are in the care of Dawn's mother, who struggles to support the children without her help. Dawn's partner Ben is a tribal firefighter. For the past few months, she has been traveling to

support Ben as he went out to various western tribal lands to fight fires. The couple was married in a tribal ceremony in June. Dawn and Ben came to Cedar City to seek emergency housing. They chose Cedar City to be near family, friends, and Dawn's tribe.

14.      Dawn and Ben had recently tested positive for Covid-19.  Dawn is suffering in jail as her access to care and medication is limited.  She has headaches, chills, nausea, and cold sweats for which she is only permitted Tylenol or ibuprofen two times a day.

15.      On October 1, 2021, a jail official informed Dawn of her $7,000 bail. No one has interviewed Dawn about her ability to pay a monetary condition of release or inquire about her family situation or other pertinent personal circumstances.

16.      As of the filing of this lawsuit, charges against Dawn have yet to be filed. Until those charges are submitted, she is unlikely to receive an initial appearance and therefore a review of the monetary condition of her release.

17.      Dawn remains in jail solely because she cannot afford to pay the $7,000 cash bond set by Magistrate Allen in a post-arrest detention review.  Nor can she afford the collateral to a bail bondsman.  As of the time of this filing, she is hoping friends or family will be able to collect the means to bail her out.

**Justin Horton**

18.      Justin Horton is a 46-year-old resident of Carbon County, Utah.

19.      Plaintiff Justin Horton is a 39-year-old native Utahn. Justin has been in the Carbon County Jail since September 28, solely because he cannot pay the $5,000 cash bail set by Defendant Hume.  After working for years in a Nevada retirement community, Justin moved back to Price to help care for his 87-year-old grandparents. Since moving back to Utah, he has been

working in construction. His efforts to reintegrate into the Price community and assist his grandparents are on hold until he is able to be released.

20.     Justin was arrested without a warrant on September 28, 2021, at approximately 4 a.m. As alleged in the probable cause statement, Justin is accused of cutting catalytic converters from vehicles and hiding in a bush when confronted by police, ultimately emerging and allowing himself to be arrested. Justin is charged with theft, which was charged as a felony "due to prior felony theft convictions within the past ten years."

21.     At approximately 7:33 a.m. on September 28, Defendant Hume issued an Order to Hold with Bail. The Order stated, in pertinent part:

> Based on the affirmation of Garrett Alan Safley, the arresting officer, the undersigned magistrate finds that probable cause existed for the arrest without a warrant of Justin Gene Horton. Justin Gene Horton may post bail in the amount of $5,000.00
>
> 76-8-305.5     FAIL TO STOP AT COMMAND OF LAW ENFORCEME
> 76-6-204          BURGLARY OF A VEHICLE
> 76-6-412(1)(B)(IV)     THEFT - PREV FELONY CONVICTION OF SUB (1)(B)(II)(A-C)
>
> If Justin Gene Horton posts bail as stated above, Justin Gene Horton is hereby ordered to be released subject to the following conditions:
> •     Call in- Every Monday
> •     Face to Face Visits
> •     Keep your address and Phone number up to date

22.     Justin cannot afford to pay a $5,000 bail amount. He is attempting to find other sources of funds to pay for his release.

### Madelaine Thompson

23.     Madelaine Thompson is a 22-year-old resident of Beaver County, Utah.

24.     Madelaine is a 22-year-old young woman who lives with her father, mother, and brother in Beaver County. She has lived in Beaver County her entire life. Madelaine is currently

grappling with some mental health concerns and has been struggling with these concerns for some time. Her mental health has made maintaining a job very difficult for her.

25. Madelaine was arrested without a warrant on September 29, 2021, at approximately 7 p.m. As alleged in the probable cause statement, after a mental health breakdown and conflict with her family, Madelaine was arrested and confined in the Beaver County Jail.

26. At approximately 3:14 p.m. on September 30, Defendant Allen issued an Order to Hold with Bail. The Order stated, in pertinent part:

> Based on the affirmation of Warren Glen Woolsey, the arresting officer, the undersigned magistrate finds that probable cause existed for the arrest without a warrant of Madelaine Jane Thompson. Madelaine Jane Thompson may post bail in the amount of $3,000.00
>
> 76-5-102.4 ASSAULT ON PEACE OFFICER OR MILITARY SVC MEMBER IN UNIFORM
> 76-6-106 CRIMINAL MISCHIEF
> 76-5-102(1)(B) ASSAULT-UNLAWFUL FORCE/VIOLENCE BODILY INJURY/RISK OF INJURY
>
> If Madelaine Jane Thompson posts bail as stated above, Madelaine Jane Thompson is hereby ordered to be released subject to the following conditions:
> •       Report your contact information and any change in address, phone or email to the Court and your attorney within 1 business day of the change
> •       Appear in court when required
> •       Avoid contact with the victim(s) of the alleged offense
> •       Commit no new offenses during the period of release
> •       Defendant shall forfeit or refrain from possession of a firearm or other dangerous weapon.
> •       Must sign Jail Release Agreement, or remain in custody and be brought before a judge for a decision on Jail Release Order conditions
> •       Defendant shall have no contact with the victims involved in this incident until further order of the court. Defendant shall not possess or consume alcohol until further order of the court.

27. On October 1, 2021, charges were filed against Madelaine for two class B misdemeanors and a class A misdemeanor. The prosecutor also filed a petition for a psychiatric

evaluation.  Among other things, the prosecution's petition alleges that Madelaine is "detached, delusional, [and has] auditory hallucinations."

28.     Madelaine has been unable to pay the $3,000 bail and likewise cannot afford to pay $300 to a bail bondsman. Prior to assignment of her bail, Madelaine was never asked about her financial means or other personal circumstances. She remains in custody solely because she is unable to pay the financial condition of her release.  She will remain in jail until at least her first appearance (Initial Appearance) before a judicial officer.

**B.     Defendants' wealth-based detention scheme detains people who cannot afford to pay and releases people who can.**

29.     Within 48 hours of an arrest without a warrant, Defendants perform a cursory review of an arrestee's detention in their capacity as magistrates.

30.     The arrestee is not notified that the review is occurring.  Neither the arrestee nor an attorney for the arrestee is present during the review.  In short, the arrestee does not know about the review, and there is no opportunity for the arrestee to participate or be heard.

31.     A the post-arrest review, a magistrate orders one of three things:  a) for the arrestee to be held without bail, for example if the arrestee was arrested on a violent felony or poses a significant risk of danger to the community or of fleeing the jurisdiction; b) for the arrestee to be released if money is paid; or c) the arrestee to be released on his or her own recognizance.  This case is about the middle category, persons who have been deemed not to pose a significant danger to the community or of flight, and have been found eligible for pretrial release.

32.     When conducting post-arrest bail reviews in their capacity as magistrates, Defendants have no information about, and conduct no inquiry into, a person's ability to pay. Defendants do not consider, or make findings regarding, non-financial alternative conditions of

release. This is so despite the fact that Defendants routinely impose conditions of release in addition to payment of the bail amount, which conditions alone might satisfy the government's interests.

33.    Those who cannot access enough money to pay the amounts required by the Defendant are jailed.  They remain in custody at least until their first court appearance, which can occur up to 6 days after arrest.

34.    During that period, arrestees are not provided counsel.  Most people who are detained because they cannot afford bail cannot afford private counsel and thus are not represented by counsel during their Initial Appearance.

35.    People who are deemed indigent are formally appointed public defenders at their Initial Appearances.  But indigent arrested people are not permitted to meet with their lawyers from the public defender's office until after the Initial Appearance has concluded.  Attorneys from the public defender's office do not typically attend individual Initial Appearances before they are appointed.  Consequently, there is a delay between an order of appointment and an appearance of counsel.

36.    Initial Appearances are typically conducted via video-link. The Judge conducts the arraignments from the courtroom, while people in custody appear on screen from the jail. Defendants typically do not conduct a review of, or reconsider, pretrial release conditions at the Initial Appearance.

37.    Written bail-reduction motions filed by counsel are the only meaningful mechanism for challenging pretrial detention.   Appointed counsel's first opportunity to file a motion challenging the secured money-bail condition is after she has met with her client following the

11

conclusion of the first court appearance at which she is appointed, which can be days or more than a week into her client's detention.  A written motion challenging secured money-bail conditions of release, once prepared by counsel, routinely takes days to be heard by a judge.

38.    This sequence of events means that people who cannot afford to either pay the money Defendants demand for their release or to hire an attorney are detained without any opportunity to contest their detentions for a minimum of several days after arrest.

39.    As a result of Defendants' policies and practices, presumptively innocent people are incarcerated solely because they cannot afford to make monetary payments or hire counsel, while arrested people with access to money are released immediately.

40.    Money bail serves as a detention mechanism not a release mechanism for the indigent.  For many people, bail orders therefore operate as *de facto* detention orders.

41.    Defendants routinely issue *de facto* detention orders without considering non-monetary bail conditions that might sufficiently mitigate any alleged risks. And they issue these *de facto* detention orders without any meaningful process, let alone the detailed procedures required by due process, including notice of the critical issues to be decided; the assistance of counsel; the right to present evidence and to confront the evidence offered by the government; application of specific legal and evidentiary standards; and an on-the-record statement of reasons for any decision to detain.

42.    These *de facto* orders of detention are issued and enforced without substantive findings or procedural safeguards required by constitutional law before the government may detain a presumptively innocent person: (1) a finding that pretrial detention is necessary because no less

restrictive alternatives are available to meet a compelling government interest, and (2) robust procedural safeguards to ensure the accuracy of that substantive finding.

43.     Defendants' policies and practices are not required by state law, which instead offers many opportunities for release which are enshrined as a right under the Utah constitution for nearly all people who are arrested.  The Utah Constitution guarantees the right to bail to an accused person in a criminal case subject to limited exceptions that do not apply to the Class Members:

> Article I, Section 8. [Offenses bailable.]
> (1) All persons charged with a crime shall be bailable except:
> (a) persons charged with a capital offense when there is substantial evidence to support the charge; or
> (b) persons charged with a felony while on probation or parole, or while free on bail awaiting trial on a previous felony charge, when there is substantial evidence to support the new felony charge; or
> (c) persons charged with any other crime, designated by statute as one for which bail may be denied, if there is substantial evidence to support the charge and the court finds by clear and convincing evidence that the person would constitute a substantial danger to any other person or to the community or is likely to flee the jurisdiction of the court if released on bail.
> (2) Persons convicted of a crime are bailable pending appeal only as prescribed by law.
> Article I, Section 9. [Excessive bail and fines -- Cruel punishments.]
> Excessive bail shall not be required…

**C.     People jailed because they are poor suffer significant consequences.**

44.     People who cannot pay a secured money bail amount to secure their release after arrest are significantly more likely to be convicted of a crime—and more likely to be convicted of a more serious crime—than people arrested on the same charges but able to pay to secure their

release.[2] Even one day of pretrial detention notably increases a person's likelihood of conviction.[3] And detention until disposition of a case is the single greatest predictor of criminal conviction.[4]

45.     Being detained pretrial for any length of time decreases a person's plea bargaining power and increases the likelihood of a plea to time served, even if the person is innocent.  Anyone detained at the time of a plea offer faces enormous pressure to plead guilty just to get out of jail.

46.     Jailing people after arrest hampers their ability to prepare their defenses for trial. For example, a jailed person without counsel cannot preserve and gather surveillance video that may disappear within hours or days of an alleged crime. A jailed person without counsel cannot take witness statements, and witnesses become more difficult to find each day after arrest.  And jailed people, even once they are appointed counsel after a week of incarceration, cannot effectively meet with that counsel and prepare the defense, including by assisting the attorney in finding evidence and witnesses or building a mitigation case that would support community-based or treatment-based alternatives at sentencing.

47.     Pretrial detention of any length also has significant personal consequences: Even one day in jail can "imperil [a person's] job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).  Because of the havoc that just days in

---

[2] Will Dobbie, Jacob Goldin & Crystal S. Yang, *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 20-21, 27 (2017), https://www.princeton.edu/~wdobbie/files/bail.pdf.

[3] Mary T. Philips, New York City Crim., Just. Agency, Inc., *Pretrial Detention and Case Outcomes, Part I: Nonfelony Cases*, 26 (2007), http://www.nycja.org/lwdcms/doc-view.php?module=reports&module_id=669&doc_name=doc.

[4] Christopher T. Lowenkamp, Marie VanNostrand & Alexander Holsinger, *Investigating the Impact of Pretrial Detention on Sentencing Outcomes*, 10-11 (2013), http://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF_Report_state-sentencing_FNL.pdf.

jail can cause, even those released after an initial period of detention are less likely to mount defenses to their cases, and are more likely to miss court dates, violate terms of release, and otherwise suffer worse outcomes in their criminal cases.

48.     Even a few days in jail significantly increases the risk of job loss, eviction from housing or homeless shelter, exposure to trauma in custody, and impaired family connections.

49.     A large body of empirical evidence shows that "low risk" people who are jailed for just two or three days after arrest because they cannot pay money bail are much more likely to commit crimes in the future and to not appear in court in the future because of the de-stabilizing effects of even short periods in jail.

50.     In sum, Defendants do not provide constitutionally required protections to indigent arrestees when it comes to detention.  Constitutional deficiencies include:

- Defendants render initial bail determination in a closed proceeding based solely upon *ex parte* communication by law enforcement or prosecutors.

- Defendants do not provide notice of the proceeding, or the critical issues to be decided at the hearing, to the arrestee.

- Defendants do not provide an opportunity to be heard or to present or confront evidence.

- Defendants do not document consideration of alternate conditions of release.

- Defendants do not make findings by any legal or evidentiary standard, or an explanation of reasons on the record.

- Defendants do not provide counsel before, or as part of, the bail-setting process.

## CLASS ACTION ALLEGATIONS

51.     The Named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

52.     A class action is a superior means, and the only practicable means, by which the Named Plaintiffs and unknown Class members can challenge the Defendants' unlawful wealth-based post-arrest detention scheme.

53.     This action is brought and may properly be maintained as a class action pursuant to Rule 23(a)(1)-(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

54.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

55.     The Plaintiffs propose one class seeking declaratory relief: All people who are or will be detained in the Beaver, Carbon, or Iron County jails because they are unable to pay a financial condition of release.

###### a.     *Numerosity (Fed. R. Civ. P. 23(a)(1))*

56.     Every person arrested in Beaver, Carbon, or Iron counties without a warrant is subjected to the Defendants' wealth-based detention scheme in which arrested people either pay for their liberty or remain confined in a jail cell without consideration of, or findings regarding, their ability to pay or personal circumstances.

57.     There are dozens of persons subject to these policies at any given time.   For example, approximately 28 persons were subject to these policies during the two weeks preceding the filing of this Complaint.

58.     Joinder is impracticable because the class is both too numerous and too fluid for the Court to feasibly hear their independent claims.

59.     Joinder is also impracticable because the members of the class are too poor to hire lawyers to bring independent claims.

**b.      *Commonality (Fed. R. Civ. P. 23(a)(2))***

60.     The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class. The Named Plaintiffs seek relief declaring that the Defendants' policies, practices, and procedures violate the rights of the Class members and mandating the Defendants to change their policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

61.     These common legal and factual questions arise from one central scheme and set of policies and practices: the Defendants' wealth-based post-arrest detention process. The Defendants operate this scheme openly and in materially the same manner every day. The material components of the scheme do not vary from Class member to Class member, and the resolution of these legal and factual issues will determine whether the members of the class are entitled to the constitutional relief that they seek.

62.     Among the important common questions of fact are:

- Whether Defendants have a policy and practice of determining the amount of money necessary to secure post-arrest release without inquiry into ability to pay;

- Whether Defendants implement their post-arrest detention scheme without consideration of ability to pay, without findings as to ability to pay, and without consideration of non-financial conditions;

- Whether Defendants require that pre-determined amounts of money be paid up front before they will release a person from jail; and

- How long arrested people must wait, in jail and without the assistance of counsel, after arrest before they have an opportunity to raise their inability to pay for their release.

63. Among the important common question of law are:

- Whether the Defendants' wealth-based post-arrest detention scheme, which requires that arrested people pay money upfront to be released and which does not consider ability to pay or non-financial conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

- Whether it is lawful to impose a secured financial condition of release that operates as a de facto order of pretrial detention because of a person's inability to pay without complying with the substantive findings, legal standards, and procedures required for issuing and enforcing a transparent order of preventive detention; and

- Whether delaying appointment of counsel for up to a week after detaining a person pursuant to an unaffordable secured financial condition of release and until after the Initial Appearance violates the Sixth Amendment's Right to Counsel Clause.

*c.*     ***Typicality (Fed. R. Civ. P. 23(a)(3))***

64.     The Named Plaintiffs' claims are typical of the claims of the other members of the Class, and the Named Plaintiffs have the same interests in this case as all other members of the Class. Each of them suffers the same injuries because Defendants do not comply with basic constitutional requirements: The Named Plaintiffs and all of the Class members are, or will be, confined in jail because they cannot or will not be able to afford to pay the Defendants' secured financial condition of release, which have been set without established constitutional protections. They also cannot and will not be able to afford retained counsel, and they have not been, and will not be, appointed counsel until they have been detained for up to a week, and until after their Initial Appearance is over. The answer to whether the Defendants' policies and practices are unconstitutional will determine the claims of the Named Plaintiffs and every other Class member.

*d.*     ***Adequacy (Fed. R. Civ. P. 23(a)(4))***

65.     The Named Plaintiffs are adequate representatives of the Class because their interests in the vindication of the legal claims that they raise are aligned with the interests of the other Class members. The Named Plaintiffs are members of the class, and their interests do not conflict with those of the other class members.

66.     There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights.

67.     Plaintiffs are represented by experienced attorneys who have experience in civil rights, complex litigation, and class action litigation in in federal court and knowledge of both the details of the Defendants' scheme and the relevant constitutional and statutory law.

68.     The efforts of Class counsel have so far included investigation of Defendants' money-based pretrial detention system, interviews of jail inmates and attorneys practicing in the area, consultation with local and national experts, and research regarding the legality of Defendants' money-bail regime.

69.     Class counsel have studied post-arrest detention systems in other Utah counties in order to investigate the wide array of lawful options in practice for government entities.  As a result, counsel have undertaken significant efforts toward becoming intimately familiar with the Defendants' scheme and with all of the relevant state and federal laws and procedures that do, can, and should govern it. The interests of the members of the Class will be fairly and adequately protected by the Named Plaintiffs and their attorneys.

*e.*        ***Declaratory Relief (Fed. R. Civ. P. 23(b)(2))***

70.     Class action status is appropriate because the Defendants, through the policies, practices, and procedures that make up their post-arrest detention scheme, have acted in the same unconstitutional manner with respect to all class members. Defendants have created and applied a simple scheme of wealth-based post-arrest detention and release: Defendants release those who can pay and detain those who cannot. They do so without offering constitutionally required process or providing counsel to challenge the lawfulness of impecunious people's detention or the necessity and effectiveness of the money-bail orders underlying their detention.

71.     The Class therefore seeks declaratory relief declaring that Defendants' practices alleged of herein are unconstitutional and should be discontinued.  This declaratory relief would apply per force to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Violation of federal Equal Protection and Due Process rights)

72.     Plaintiffs incorporate by reference all other allegations of this complaint as though fully set forth herein.

73.     The Fourteenth Amendment's Due Process and Equal Protection clauses have long prohibited jailing people solely because of their inability to make monetary payments. Separately, Plaintiffs have a fundamental right to pretrial liberty. Neither the right against wealth-based detention nor the right to pretrial liberty may be infringed unless the government demonstrates that detention is necessary. Defendants violate Plaintiffs' rights by placing and keeping them in jail because they cannot afford to pay monetary bail amounts required without inquiry into and findings concerning ability to pay and without consideration of and findings concerning alternative conditions of release and the necessity of wealth-based pretrial detention.

74.     The Due Process Clause requires the government, before depriving anyone of the fundamental right to pretrial liberty, to provide notice of the critical issues to be decided at the hearing. The person must be represented by counsel and have the opportunity to present and confront evidence and to be heard concerning the issue of pretrial release or detention. Any transparent or de facto order of pretrial detention must be accompanied by findings on the record by clear and convincing evidence explaining why no combination of conditions could sufficiently serve the government's compelling interests.

75.     Defendants violate Plaintiffs' procedural due process rights by depriving them of their fundamental right to pretrial liberty without providing these necessary safeguards to ensure the accuracy of the substantive finding of necessity.

**Second Claim for Relief**
**(Violation of Sixth Amendment right to counsel)**

76.     Plaintiffs incorporate all other paragraphs of this Complaint as though fully set forth herein.

77.     The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel at each post-attachment critical stage of the criminal process. The bail hearings to which Plaintiffs are entitled are post-attachment critical stages for which counsel must be provided.

78.     Plaintiffs' right to counsel attaches once they have been stripped of their liberty by virtue of the charges against them and appear before a judicial officer to be informed of the charges lodged against them and have bail set or reviewed.  Bail orders that result in pretrial detention prejudice both Plaintiffs' immediate liberty interests and the ultimate outcomes of their cases. And they constitutionally may be issued only following robust adversarial hearings.

79.     Defendants violate the Sixth Amendment by imposing de facto orders of detention, and detaining Plaintiffs pursuant to these orders, without providing counsel to assist at required pretrial detention hearings.

80.     Defendants further violate Plaintiffs' Right to Counsel by delaying the appointment of counsel for six days or more.  Every day that Plaintiffs are jailed increases the likelihood that their cases will be resolved against them, regardless of the strength of the evidence against them. Without counsel, Plaintiffs have no meaningful ability to file bail-reduction motions, the only avenue that Defendants offer for obtaining release from pre-trial detention and avoiding its prejudicial effects. The Sixth Amendment requires that Defendants appoint counsel for Plaintiffs who are detained under de facto detention orders and are too poor to hire lawyers, so that they can

meaningfully challenge their prejudicial detentions and so avoid the prejudice of their unlawful pretrial detentions

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and the other Class members request that this Court issue the following relief:

A.    A declaration that Defendants violated and are violating Named Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without inquiry into ability to pay and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest;

B.    A declaration that Defendants violated and are violating Named Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests;

C.    A declaration that Defendants violate Plaintiffs' and class members' right to counsel under the Sixth Amendment by failing to provide counsel to indigent people at an individualized bail determination hearing;

D.    An order certifying the class defined above;

E.    An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

F.      Any other relief this Court deems just and proper.

DATED 4 October 2021

CHRISTENSEN & JENSEN, P.C.

Karra J. Porter
Anna P. Christiansen
*Attorneys for Plaintiffs*

**Plaintiff Address:**
Contact through counsel