THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAWN HEPIKIYA MEDINA, JUSTIN HORTON, MADLAINE THOMPSON, LUKE MELVIN LEWIS, MARCOS HERNANDEZ, DENISE ANN BEIERLE on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>THE HON. ANN MARIE MCIFF ALLEN, THE HON. JEREMIAH HUMES, THE HON. CHRISTINE JOHNSON, THE HON. THOMAS LOW, and THE HON. MATTHEW BELL in their official capacities,<br><br>             Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 4:21-cv-00102-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

        Defendants' Motion to Dismiss was filed over a year ago on March 4, 2022.[1] Extensive

briefing by the parties followed. Plaintiffs filed a Memorandum in Opposition on May 31, 2022,[2]

and Defendants filed their Reply on July 15, 2022.[3] Plaintiffs filed a Motion to Amend their

Amended Complaint on September 6, 2022.[4] Because Defendants did not object,[5] Plaintiffs filed

---

[1] Mot. to Dismiss, docket no. 29, filed Mar. 4, 2022.

[2] Mem. in Opp'n ("Opposition"), docket no. 35, filed May 31, 2022.

[3] Reply Mem. ("Reply"), docket no. 44, filed July 15, 2022.

[4] Mot. to Am., docket no. 46, filed Sep. 6, 2022.

[5] Defs.' Notice of Non-Obj., docket no. 48, filed Sep. 14, 2022.

their Second Amended Complaint on September 27, 2022.[6] The parties stipulated to file

simultaneous, supplemental briefing[7] based on the new complaint. The parties filed this briefing

on December 16, 2022.[8] Finally, the parties argued their respective cases in person on January

19, 2023.[9]

After careful review of the parties' briefing, and after hearing oral argument, the

Defendants' Motion to Dismiss is GRANTED.


## TABLE OF CONTENTS

A.   BACKGROUND .................................................................................................... 3
B.   STANDARD OF REVIEW ................................................................................... 6
C.   JURISDICTION .................................................................................................... 7
   1.   Standing ..................................................................................................... 7
      a.   Retrospective Declaratory Relief ................................................. 7
      b.   Prospective Declaratory Relief ..................................................... 8
      c.   Summary of Standing .................................................................... 9
   2.   Rooker-Feldman Doctrine ......................................................................... 9
   3.   Younger Abstention Doctrine .................................................................. 10
   4.   Mootness .................................................................................................. 11
   5.   Sovereign Immunity and the Ex parte Young Doctrine.......................... 12
D.   THE FOURTEENTH AMENDMENT ................................................................ 13
   1.   Due Process.............................................................................................. 13
      a.   Procedural Due Process .............................................................. 14
      b.   Substantive Due Process ............................................................. 16
   2.   Equal Protection ...................................................................................... 20
E.   THE SIXTH AMENDMENT .............................................................................. 21
F.   ORDER ................................................................................................................ 22

---

[6] Second Am. Compl. ("Complaint") ¶¶ 3-9, docket no. 56, filed Sep. 27, 2022.

[7] Stip. Mot. for Suppl. Briefing, docket no. 52, filed Sep. 22, 2022.

[8] Defs.' Suppl. Mem., docket no. 60, filed Dec. 16, 2022; Pls.' Suppl. Mem., docket no 61, filed Dec. 16, 2022.

[9] Min. Order, docket no. 63 (no attached document), entered Jan. 19, 2023.

## A.  BACKGROUND

Six individuals ("the Named Plaintiffs"[10]) from across  Utah allege that their

constitutional rights were violated after they were arrested and incarcerated because they were

held in custody on the sole condition of posting a monetary bail amount. Because they could not

afford to bail out, they remained in custody until at least their next hearing which was a handful

of days later. The extended custody affected their personal lives, jobs, and finances. As the

Supreme Court has stated, "[t]he consequences of prolonged detention may be more serious than

the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job,

interrupt his source of income, and impair his family relationships."[11] Plaintiffs' stories are not

dissimilar to many persons who remain in custody after a judge or magistrate sets a bail amount

that the individual subsequently cannot afford. The feelings of unfairness are understandable:

those with assets can afford release while those without cannot. It therefore makes sense that

Plaintiffs also brought a class action claim for "[a]ll people who are or will be detained in the

Beaver, Carbon, or Iron County jails because they are unable to pay a financial condition of

release."[12] They are referred to here as "the Class Members" because Plaintiffs' Motion to

Certify Class is still pending.[13]

Each Named Plaintiff was a defendant in a separate criminal state case.[14] The following

is a summary of those cases based on the allegations of the Second Amended Complaint:

---

[10] Complaint ¶¶ 3-9.

[11] *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).

[12] Complaint ¶ 78.

[13] Am. Mot. to Certify Class, docket no. 9, filed Oct. 5, 2021.

[14] Complaint ¶¶ 13-51.

- **Luke Lewis** was arrested on September 28, 2021.[15] The next day, Defendant Judge Christine Johnson issued an order to hold Lewis for $10,000.00 bail,[16] an amount he could not afford.[17] He was employed at the time and missed five days of work.[18] Lewis resolved his case on July 21, 2022, by a plea agreement.[19]

- **Justin Horton** was arrested on September 28, 2021.[20] The same day, Defendant Judge Jeremiah Humes issued an order to hold Horton for $5,000.00 bail,[21] an amount he could not afford.[22] Prior to being arrested, he was living in Price, Utah to care for his elderly grandparents.[23] Horton resolved his case on January 24, 2022, by a plea agreement.[24]

- **Madelaine Thompson** was arrested on September 29, 2021.[25] Judge Ann Marie McIff Allen issued an order to hold Thompson for $3,000.00 bail,[26] an amount she could not afford.[27] Thompson was not employed due to mental health issues.[28] Thompson resolved her case on February 7, 2022, by a plea agreement.[29]

---

[15] Opposition Ex. B, 2, docket no. 35-2, filed May 31, 2022.

[16] Complaint ¶ 34.

[17] *Id*. at ¶ 39.

[18] *Id*. at ¶ 36.

[19] Case Minutes, www.xchange.utcourts.gov (last accessed Jan. 31, 2023) 13.

[20] Opposition Ex. A, 1, docket no. 35-1, filed May 31, 2022.

[21] Complaint ¶ 24.

[22] *Id*. at ¶ 25.

[23] *Id*. at ¶ 22.

[24] Opposition Ex. G ("Exhibit G"), 6, docket no. 35-8, filed May 31, 2022.

[25] *Id.* at 1.

[26] Complaint ¶ 29.

[27] *Id*. at ¶ 31.

[28] *Id*. at ¶ 27.

[29] Exhibit G at 6.

- **Dawn Medina** was arrested on September 30, 2021. The same day, Judge Allen issued an order to hold Medina for $7,000.00 bail,[30] an amount she could not afford.[31] Medina has two minor children for whom her mother and she support.[32] Medina resolved her case on October 18, 2021, by a plea agreement.[33]

- **Marco Hernandez** was arrested on September 30, 2021.[34] On October 1, 2021, Judge Johnson issued an Order to Hold with Bail for $10,000.00,[35] an amount he could not afford.[36] Hernandez cleans buildings and houses, and cuts hair for a living. He has one minor son over whom he has joint custody.[37] Hernandez resolved his case on November 4, 2021, by a plea agreement.[38]

- **Denise Beierle** was arrested on September 1, 2022.[39] Judge Allen issued an Order to Hold with Bail for $500.00,[40] an amount she could not afford.[41] Beierle is disabled which prevents her from being able to work.[42] She also suffers from a

---

[30] Complaint ¶ 15.

[31] *Id.* at ¶ 20.

[32] *Id.* at ¶ 16.

[33] Opposition Ex. H, 4-5, docket no. 35-9, filed May 31, 2022.

[34] Opposition Ex. F1 ("Exhibit F1"), 1, docket no. 35-6, filed May 31, 2022.

[35] Complaint ¶ 42.

[36] *Id.* at ¶ 45.

[37] *Id.* at 43.

[38] Exhibit F1 at 4-5.

[39] Case Minutes, www.xchange.utcourts.gov (last accessed Feb. 1, 2023) 1.

[40] Complaint ¶ 48.

[41] *Id.* at ¶ 51.

[42] *Id.* at ¶ 49.

variety of mental health conditions.[43] She resolved her case on October 3, 2022, by a plea agreement.[44]

Plaintiffs seek retrospective and prospective declaratory relief. Plaintiffs ask for a declaration that Defendants violated and are violating (1) "Named Plaintiffs' and class members' constitutional rights,"[45] and (2) "[their] right to procedural due process under the Fourteenth Amendment."[46] They also request "[a] declaration that Defendants violate Plaintiffs' and class members' right to counsel under the Sixth Amendment by failing to provide counsel to indigent people at an individualized bail determination hearing."[47]

## B.  STANDARD OF REVIEW

Defendants bring their Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[48] "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[49] Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[50] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[51] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light

---

[43] *Id.* at ¶ 50

[44] Case Minutes, www.xchange.utcourts.gov (last accessed Feb. 1, 2023) 4-5.

[45] Complaint 27.

[46] *Id.* at 27.

[47] *Id.* at 28.

[48] Mot. to Dismiss 1.

[49] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*).

[50] Fed. R. Civ. P. 12(b)(6); *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[51] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

most favorable to the plaintiff.[52] However, "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation" of the law are disregarded.[53]

## C.  JURISDICTION

### 1.  *Standing*

"In order to satisfy Article III standing,"[54] "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, *and* (3) that is likely to be redressed by a favorable judicial decision."[55]

Plaintiffs' claims satisfy the first two elements of standing. They have each shown injury in fact by incarceration, directly traceable to Defendants' conduct. The analysis below focuses on the third requirement of standing: redressability of the alleged injuries.

#### a.  **Retrospective Declaratory Relief**

Plaintiffs have standing to seek retrospective declaratory relief because it would remedy a past harm. "Seek[ing] a retrospective declaratory judgment that [one's] constitutional rights were violated"[56] is "not moot where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or future behavior."[57]

Plaintiffs allege that considering wealth in the pretrial detention decision is a Due Process and Equal Protection violation.[58] They argue that a person is deprived of a fundamental right when detained and that the Due Process Clause requires an attorney to be present when or if bail

---

[52] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[53] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[54] *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 492 (10th Cir. 1998) (cleaned up).

[55] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (emphasis added).

[56] *Collins v Daniels* at 1314 (10th Cir).

[57] *Lippoldt v Cole* at 1217 (10th Cir).

[58] Complaint ¶ 96.

is set by a magistrate or a judge.[59] Finally, they state that the Sixth Amendment's Right to Counsel requires an attorney be present at an initial bail determination.[60] Because a ruling on these claims could protect future rights of a criminal defendant, and change behavior by judges, Plaintiffs have standing to seek retrospective declaratory relief.

### b. Prospective Declaratory Relief

The Named Plaintiffs lack standing to seek prospective declaratory relief because pretrial detention is not a current threat. "To have standing to seek prospective declaratory relief, 'the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.'"[61]

The Named Plaintiffs resolved their criminal cases with plea agreements,[62] so they are no longer being held on pretrial detention and have no continuing injury.

There is no evidence that the Named Plaintiffs will be arrested and held with bail "in the future."[63] Unlike a disabled passenger who rides a fixed bus route for years and will continue to do so repeatedly,[64] the Named Plaintiffs have no proof that they intend to or are likely to be arrested again. Mere speculation is not good enough.[65] There is also no evidence that Named Plaintiffs will not be able to afford bail in the future. Each of the Named Plaintiffs gave a short synopsis of their financial circumstances and their inability to afford their bail amount.[66] This

---

[59] *Id*. at ¶ 97.

[60] *Id*. at ¶ 101.

[61] *Est. of Schultz v. Brown*, 846 F. App'x 689, 693 (10th Cir. 2021) (*quoting Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004)).

[62] *See supra* notes 20, 25, 30, 34, 39, 45.

[63] *But see Gerstein*, 420 U.S. at 111 (Claiming that "[t]he [already convicted] individual could nonetheless suffer repeated deprivations.").

[64] *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[65] *Id*.

[66] *Compare* Complaint ¶¶ 16, 20, 22, 25, 27, 31, 36, 39, 43-45, 51.

information is disheartening because, if Named Plaintiffs had possessed the financial means to bail out, they likely would have done so. But aside from the summary statements in the Amended Complaint, none of the Named Plaintiffs provided an affidavit detailing their current financial state.

While the Named Plaintiffs do not have standing for prospective declaratory relief, the Class Members do. "Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted…[I]t is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures."[67] Plaintiffs allege that the Class Members are, as stated above, "[a]ll people who are or will be detained in the Beaver, Carbon, or Iron County jails because they are unable to pay a financial condition of release."[68] These are individuals who are or will be held on pretrial detention, who have not resolved their criminal case, and therefore who may be under threat of being injured in the future.

### c.   Summary of Standing

Plaintiffs have standing to seek retrospective declaratory relief, and the Class Members have standing to seek prospective declaratory relief.

*2. Rooker-Feldman Doctrine*

"The *Rooker-Feldman* doctrine arose out of [28 U.S.C. § 1257(a)]."[69] The 10th Circuit "agreed with several of [the] sister circuits…that '*Rooker-Feldman* applies only to suits filed after state proceedings are final.'"[70] As Plaintiffs have corrected stated, "[t]here was no final

---

[67] *Gerstein*, 420 U.S. at 111.

[68] Complaint ¶ 78.

[69] *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006).

[70] *Patton*, 451 F.3d at 641–42 (quoting *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir 2006).

judgment in any of the [Named] Plaintiffs' state cases before the Complaint was filed."[71] Defendants concede this point in a footnote of their Reply Memorandum.[72] The *Rooker-Feldman* doctrine is no impediment to Plaintiffs' claims.

  3.  Younger Abstention *Doctrine*

*Younger Abstention* means that "[a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[73]

First, while there were "ongoing state criminal proceedings" when this Complaint was filed, Plaintiffs' civil rights claims do not bear directly on the charges that were prosecuted. The claims are based on the bail that held them and the process by which bail was determined, not the criminal charges in the state cases. And neither the Complaint, Amended Complaint, nor the Second Amended Complaint detail the facts of the state criminal cases.

Second, the state court does provide the opportunity for Plaintiffs to consider the issues they raise here. "[A] defendant may seek discretionary appellate review of any interlocutory order,"[74] i.e., a defendant does not have to "wai[t] for the entire case to come to a conclusion"[75] before appealing an order regarding bail. If that takes too long, a defendant may petition for "Extraordinary Writ to a Judge" (after May 1, 2023, it will be known as "Extraordinary Relief"),

---

[71] Opposition 10.

[72] Reply 7, n.21.

[73] *Amanatullah v. Colorado Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999).

[74] Utah Code § 77-18a-1(2).

[75] *State v. Seat*, 2022 UT App 143, ¶ 41, 523 P.3d 724, 734.

seeking relief so long as they explain "why on other plain, speedy, or adequate remedy exists"[76] and therefore "why the writ should issue."[77]

Finally, the process of determining bail amounts is, as Plaintiffs concede,[78] an important state interest. Even though this prong of the *Younger Abstention* Doctrine is present, the first and second prongs are not. Therefore, we abstain because Plaintiffs' claims are not wholly imbedded in state law and because state court process provides an adequate forum.

### 4. Mootness

"Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual, ongoing cases or controversies."[79] A plaintiff "seeking a declaratory judgment must comport with the same mootness principles as any other suit."[80]

Defendants argue that Plaintiffs' claim that "placing and keeping [Plaintiffs] in jail" without inquiring into their financial status[81] is moot because on November 16, 2021, "the Utah Legislature enacted H.B. 2003,"[82] which, *inter alia*, modified Utah Code § 77-20-202 so that jail employees are required to include in their probable cause statement "the (booked) individual's financial circumstances." Although "[a] legislature is…free to amend its own laws at any time and thereby moot ongoing litigation,"[83] if "a plaintiff still 'retain[s] a legally cognizable interest

---

[76] Utah R. App. P. 19(b)(10).

[77] Utah R. App. P. 19(b)(4).

[78] Opposition 12.

[79] *Seneca-Cayuga Tribe of Oklahoma v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003) (quotation, alteration omitted).

[80] *Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*, 491 F.3d 1143, 1147 (10th Cir. 2007) (cleaned up).

[81] Complaint ¶ 96.

[82] Mot. to Dismiss 18.

[83] *Hill v. Kemp*, 478 F.3d 1236, 1243 (10th Cir. 2007).

in the outcome, the case is not moot,' and we are not free to shirk the responsibility of deciding the remaining controversy before us."[84]

Such is the situation here. Utah Code § 77-20-202 requires correctional facility employees to inquire into a booked person's financial status, but this Utah statute does not address Plaintiffs' remaining allegations.[85] An edited statute resolving one of a handful of grievances does not moot a case. Plaintiffs' claims are not mooted by H.B. 2003.

5. *Sovereign Immunity and the* Ex parte Young *Doctrine*

The Eleventh Amendment declares that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[86] "Even though the clear language does not so provide, the Eleventh Amendment has been interpreted to bar a suit by a citizen against the citizen's own State in Federal Court."[87] "[T]here are three well-established exceptions" to this rule.[88] First, a state may consent to the lawsuit.[89] Second, due to the States "adopting the Fourteenth Amendment,…Congress may authorize private suits against nonconsenting States pursuant to its § 5 enforcement power."[90] "Finally, under the doctrine announced in *Ex parte Young*, an individual seeking only prospective

---

[84] *Kemp*, 478 F.3d at 1243 (quoting *Seneca-Cayuga Tribe*, 327 F.3d at 1028).

[85] *See* Complaint ¶¶ 95-103.

[86] U.S. Const. amend. XI.

[87] *Amisub (PSL), Inc. v. State of Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 792 (10th Cir. 1989).

[88] *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 866 (10th Cir. 2003).

[89] *See Alden v. Maine*, 527 U.S. 706, 755 (1999).

[90] *Alden*, 527 U.S. at 756.

injective (or declaratory[91]) relief for ongoing violations of federal law may bring suit against state officials in federal courts."[92]

It is under this third doctrine that Plaintiffs' case can go forward but only as to the Class Members' request for prospective declaratory relief. Plaintiffs' request for retrospective relief is foreclosed at this stage in the analysis by the Eleventh Amendment. Retrospective relief does not fall within one of the three exceptions under *Ex Parte Young*. However, because the Class Members are not precluded by the *Ex parte Young* Doctrine, jurisdiction is valid. We now address Plaintiffs' two substantive claims.

## D.  THE FOURTEENTH AMENDMENT

The Fourteenth Amendment provides that "[n]o State shall…deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."[93]

Plaintiffs allege that their due process and equal protection rights were violated because they were incarcerated "without inquiry into ability to pay"; not given notice or an opportunity to be heard during their initial bail determination; and kept in custody because they could not afford to pay their bail amounts.[94]

### 1.  *Due Process*

"[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the

---

[91] *Id.*

[92] *Chaffin*, 348 F.3d at 866; *see Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002); *see also Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022) ("*Ex parte Young* applies to both injunctive and declaratory relief.").

[93] U.S. Const. amend. XIV.

[94] Complaint 27.

other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision."[95] Each doctrine is discussed in turn below.

### a. Procedural Due Process

Plaintiffs claim that "[t]he right at issue here is [their] right to pre-trial liberty."[96] A plaintiff must prove two inquiries to show they were denied procedural due process: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?"[97] Plaintiffs have met the first requirement but not the second.

A protected liberty interest "may arise from the Constitution itself…or it may arise from an expectation or interest created by state laws or policies."[98] Here, that interest is present, and it arises from the Constitution.[99] An arrestee has a "strong interest in liberty," a right of "importance and fundamental nature."[100]

Second, Plaintiffs must prove that the method used to deny them a liberty was inappropriate. "The Due Process Clause of the United States Constitution entitles each citizen to notice and an opportunity to be heard prior to the deprivation of a fundamental right."[101]

---

[95] *Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991).

[96] Opposition 23.

[97] *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

[98] *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (cleaned up); *see Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005) (explaining that a liberty interest can be "inhere in the Due Process clause or it may be created by state law.") (cleaned up).

[99] *Compare with Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012) ("For state law to create a liberty interest, it must establish substantive predicates to govern official decisionmaking (sic) and mandate an outcome when relevant criteria have been met.") and *Doyle v. Okla. Bar Ass'n,* 998 F.2d 1559, 1570 (10th Cir.1993) ("The mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process clause.").

[100] *U.S. v. Salerno* 481 U.S. 739, 750 (1987).

[101] *Hennigh*, 155 F.3d at 1256.

Plaintiffs contend that they are (1) not given notice of; (2) not given the right to be heard at; and (3) not given the right to counsel at the initial bail determination.[102] It is safe to assume Plaintiffs define "initial bail determination" as the moment when an on-call judge reviews a probable cause statement submitted by a law enforcement officer.[103] Notice and an opportunity to be heard at the initial bail determination is not required by the Constitution.

In the early 1970s, the Southern District of Florida "held that the Fourth and Fourteenth Amendments give all arrested persons charged by information a right to a judicial hearing on the question of probable cause."[104] The Court of Appeals affirmed.[105] Together, these two courts held "that the determination of probable cause must be accompanied by the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses."[106] The Supreme Court corrected this misconception, stating that all of "[t]hese safeguards are not essential for the probable cause determination required by the Fourth Amendment."[107] Rather, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."[108] Probable cause can be determined "without an adversary hearing."[109] The Supreme Court gave states vast latitude on structuring this probable cause process, saying that "[t]here is no single preferred pretrial

---

[102] Opposition 24.

[103] *See* Complaint 2, 14, 19-20; Opposition 24-25.

[104] *Gerstein*, 420 U.S. at 107.

[105] *Id.* at 114.

[106] *Id.* at 119.

[107] *Id.*

[108] *Id.* at 114.

[109] *Id.* at 120.

procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole."[110]

Utah's current bail system satisfies the Constitution's procedural Due Process requirement discussed in *Gerstein*. "A person arrested and delivered to a correctional facility without a warrant for an offense must be presented without unnecessary delay before a magistrate for the determination of probable cause and eligibility for pretrial release pursuant to Utah Code § 77-20-1."[111] Additionally, the arresting officer or a prosecutor must submit an affidavit no later than twenty-four hours after the arrest containing facts supporting their belief that the defendant has committed a crime.[112] The judge is required to then determine if probable cause exists and "must determine if the person is eligible for pretrial release…,"[113] in essence, whether they can be released from custody prior to trial on bail.[114] This practice satisfies the Constitutional requirements. The "judicial determination" is accomplished within twenty-four hours of a person being arrested. Importantly, Plaintiffs point to no case law specifically requiring more than this practice.

### b. Substantive Due Process

Plaintiffs also allege that they were denied substantive Due Process. In a substantive Due Process analysis, Plaintiffs must "first defin[e] the type of right at stake"—fundamental or non-fundamental.[115] "Once that baseline is established, the Court applies the level of review that

---

[110] *Id.*

[111] URCRP 9(a)(1).

[112] URCRP 9(a)(2).

[113] URCRP 9(a)(4).

[114] Utah Code § 77-20-102(11).

[115] *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, 732 F. App'x 624, 629 (10th Cir. 2018) (internal quotation omitted).

corresponds to the right identified."[116] If a law infringes on a fundamental right, it must be "narrowly tailored to serve a compelling state interest."[117] Otherwise, the government need only show how the law is "rationally related to legitimate government interests."[118]

### i.   Non-Fundamental Right

Plaintiffs claim that they "have a fundamental right to pretrial liberty" and that "[n]either the right against wealth-based detention nor the right to pretrial liberty may be infringed unless the government demonstrates that detention is necessary."[119] Plaintiffs[120] fail to show that their right is "objectively, deeply rooted in this Nation's history and tradition."[121] Plaintiffs give no such information in their Second Amended Complaint. Their objections to Utah's bail system, though detailed, lack any support from history.[122] Their response to Defendants' motion does no better.[123]

Historically, courts hearing Fourteenth Amendment claims focus on laws or persons which physically prevent a detainee from paying their bail. The Tenth Circuit held in *Gaylor v. Does* that a correctional facility unconstitutionally detained an individual for five days by failing to communicate that bail was set at $1,000.00 during that time.[124] The Tenth Circuit also agreed with the Western District of Oklahoma that a sheriff could not explain why he "refus[ed] to allow Plaintiff to post bail and detain[ed] Plaintiff for three days other than the assertion that the

---

[116] *Dawson*, 732 F. App'x at 629.

[117] *Reno v. Flores*, 507 U.S. 292, 302 (1993).

[118] *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997).

[119] Complaint ¶ 96; *see* Mot. to Dismiss 29.

[120] *See Seegmiller v. LaVerkin City*, 528 F.3d 762, 770 (10th Cir. 2008).

[121] *Glucksberg*, 521 U.S. at 721 (cleaned up).

[122] *See* Complaint ¶¶ 53-79.

[123] *See* Complaint at 25-27.

[124] 105 F.3d 572 (10th Cir. 1997).

longstanding policies or customs at the jail…prohibited individuals charged with a felony from posting bond until they had been arraigned by a judge and from posting bond after hours."[125] Only when a plaintiff brings an Eighth Amendment "excessive bail" claim, which prevents bail from being set at "an amount higher than necessary to insure the appearance of the accused at trial,"[126] can a court entertain affordability argument. Plaintiffs do not raise an excessive bail claim and make no excessive bail argument.

Although the Supreme Court found liberty is a strong interest, as stated earlier,[127] Plaintiffs have not met their burden to show that wealth-based detention or pretrial liberty are fundamental rights.

## ii.   Rational Basis Review

Rational basis review as applied to pretrial detainees requires that "[a] court must decide whether [particular restrictions and conditions are] imposed for the purpose of punishment or whether [they are] but an incident of some other legitimate governmental purpose…Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."[128]

Essentially Plaintiffs must explain how their "conditions amount[ed] to punishment [as] the detainee."[129] Plaintiffs' argue that "Defendants' practice of requiring people to pay unattainable amounts of money to secure their release is the equivalent of issuing orders of detention against them, but without any of the substantive findings or procedural safeguards

---

[125] *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010).

[126] *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983).

[127] *Supra* note 105.

[128] *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979).

[129] *Id.* at 535.

constitutionally required for orders of detention."[130] Therefore, Plaintiffs assert, the requirement of bail is punishment.

The Utah Code says otherwise. The statute states that bail is a right: "[a]n individual charged with, or arrested for, a criminal offense shall be admitted to bail as a matter of right…."[131] However, a criminal defendant is not given a chance to "make bail" if they are charged with any of the following:

> (a)  a capital felony;
> (b)  a felony committed while on probation;
> (c)  a felony charge if the individual would be a danger to the community or would flee;
> (d)  a felony charge if the individual violated a material condition of release while previously on bail;
> (e)  a domestic violence offence;
> (f)  driving under the influence if a serious bodily injury or death occurred; or
> (g)  a felony charge with evidence that the individual will not appear for future court appearances.[132]

An argument that any of the (a)-(g) limitations on bail constituted "punishment" would be more understandable. But Plaintiffs instead complain that even though they are given the opportunity to bail out of jail, they just cannot afford to do so. The statute does not make bail a punishment.

Additionally, setting a bail amount is just one of twenty-one conditions a magistrate or judge may use in a temporary pretrial status order when they "find there is probable cause to support the individual's arrest under Rule 9 of the Utah Rules of Criminal Procedure."[133] The

---

[130] Complaint 3.

[131] Utah Code § 77-20-201(1).

[132] Utah Code § 77-20-201(1)(a)-(g).

[133] *Id*. at 205(1)(a).

requirement to "comply with a financial condition"[134]—also known as "monetary bail—"means any monetary condition that is imposed to secure an individual's pretrial release."[135]

The statute reflects a rational connection between bail and securing a criminal defendant's appearance in court, which is a legitimate governmental interest. Bail is a means to secure release, not a method to punish. Therefore, Plaintiffs' Due Process claims fail.

### 2. Equal Protection

"The Equal Protection Clause…is essentially a direction that all persons similarly situated should be treated alike."[136] Plaintiffs assert that they were treated differently because Defendants "release[ed] arrestees who [could] pay and automatically detain[ed] those who [could] not."[137] Strict scrutiny would apply[138] only if Plaintiffs show that their attested right is fundamental or if they demonstrate that they are a suspect class.[139] As shown in Part D. 1. b. i., Plaintiffs have not pled a fundamental right.

Plaintiffs have also not demonstrated their status as a suspect class. The Supreme Court has made it very clear that they "ha[ve] never held that financial need alone identifies a suspect class for purposes of equal protection analysis."[140] Because that is the basis for Plaintiffs' Equal Protection claim, it does not qualify.

Because Part D. 1 b. ii. articulates that rational basis review applies, there is no need for additional analysis. Plaintiffs Equal Protection claim fails.

---

[134] *Id*. at 205(4)(t).

[135] *Id*. at 102(6).

[136] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[137] Opposition 28.

[138] *Id*.

[139] *Goetz v. Glickman*, 149 F.3d 1131, 1140 (10th Cir. 1998).

[140] *Maher v. Roe*, 432 U.S. 464, 471 (1977).

## E.  THE SIXTH AMENDMENT

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence (sic)."[141]

Plaintiffs' second and final claim alleges that "Defendants violate the Sixth Amendment by imposing de facto orders of detention, and detaining Plaintiffs pursuant to these orders, without providing counsel to assist at required pretrial detention hearings."[142] They argue that this is so "[detainees] can meaningfully challenge their prejudicial detentions and so avoid the prejudice of their unlawful pretrial detentions."[143]

To determine if the Sixth Amendment's guarantee covers a particular phase of a case, a plaintiff must prove (1) that the right of counsel has attached and (2) that a "'critical stage' of the postattachment (sic) proceedings" has been reached.[144]

"[T]he right to counsel attaches at the initial appearance before a judicial officer"[145] which is "the first formal proceeding against an accused."[146] In Utah, this is "an individual's first appearance before the court"[147] which must take place within three days of a criminal defendant's arrest.[148] This determination, "which typically occurs within 24 hours"[149] of arrest, does not occur in a formal hearing. The initial bail determination is part of a written order to hold

---

[141] U.S. Const. amend. VI.

[142] Complaint ¶ 102.

[143] *Id.* at ¶ 103.

[144] *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 211–12 (2008).

[145] *Id*. at 199.

[146] *McNeil v. Wisconsin*, 501 U.S. 171, 180–81(1991).

[147] Utah Code § 77-20-205(2)(a); *see* Utah Code § 77-20-206(2).

[148] URCRP Rule 9A(d).

[149] Complaint 2.

a criminal defendant with bail,[150] known as a "temporary pretrial status order," which is mandatory if a state judge finds probable cause to support an arrest.[151] Plaintiffs cite to no authority that the right to counsel attaches with this temporary pretrial status order. Therefore, the right to counsel does not attach at the initial bail determination stage.

Also, Plaintiffs have not demonstrated how the judge's decision to set bail in a temporary pretrial status order is a "critical stage" of a case. "The cases have defined critical stages as proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or ... meeting his adversary."[152] Plaintiffs acknowledge that "[t]he initial bail determination is a closed proceeding" at which a criminal defendant is not present. Because there is no confrontation, counsel is unnecessary.

The Utah criminal procedure for an initial bail determination without counsel present does not violate the Sixth Amendment.

### F.   ORDER

Defendants' Motion to Dismiss[153] is hereby GRANTED, and the clerk is directed to close the action.

Signed March 30, 2023.

BY THE COURT

David Nuffer
United States District Judge

---

[150] Complaint ¶¶ 15, 24, 29, 34, 42, 48.

[151] Utah Code § 77-20-205(1)(a).

[152] *Rothgery*, 554 U.S. 212 n.16.

[153] Mot. to Dismiss, docket no. 29, filed Mar. 4, 2022.