THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAWN HEPIKIYA MEDINA, JUSTIN HORTON, MADLAINE THOMPSON, LUKE MELVIN LEWIS, MARCOS HERNANDEZ, DENISE ANN BEIERLE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HON. ANN MARIE MCIFF ALLEN, THE HON. JEREMIAH HUMES, THE HON. CHRISTINE JOHNSON, THE HON. THOMAS LOW, AND THE HON. MATTHEW BELL in their official capacities,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS AND MEMORANDUM**<br><br>Case No. 4:21-cv-00102-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

## I.   INTRODUCTION

Six named plaintiffs ("Plaintiffs") alleged injury at the hands of the defendants (who are state court Judges ("Judges")) for prolonged detentions due to their inability to pay the bail set for them. Plaintiffs allege that no public official conducted an inquiry into their financial circumstances, ability to pay, or made other findings concerning the necessity of pre-trial detention or alternative conditions for pre-trial release. Although Plaintiffs are no longer being held in detention and suffering continuing injury, they also filed a motion for class certification on behalf of all "people who are or will be detained in the Iron, Carbon, Beaver, and Utah County jails because they are unable to pay a secured financial condition of release."[1] Plaintiffs

---
[1] Plaintiffs' Amended Motion for Class Certification, docket no. 9, filed October 5, 2021.

seek declaratory relief for themselves, and all others similarly situated. This order considers whether the class may be certified so that the Plaintiffs may continue their case. "A named plaintiff whose claim expires may not continue to [proceed] on the merits until a class has been properly certified."[2]

## II.    BACKGROUND[3]

The six named plaintiffs were pre-trial detainees in Iron, Carbon, Beaver, and Utah counties. Their common grievance is the absence of an individualized inquiry into their financial circumstances prior to setting a financial condition of their release that was beyond their ability to pay.[4] This resulted in their prolonged detention, affecting their lives personally and financially—separating them from their family and dependents and impacting their employment.

In their Amended Complaint, the Plaintiffs also allege "[n]o official has conducted an inquiry into or findings concerning alternative conditions of pre-trial release or the necessity of pre-trial detention."[5] The Plaintiffs assert that "no analysis of constitutional factors such as ability to pay is performed, and the Order [of detention] contains no constitutionally required findings about ability to pay or why alternative conditions of release would not satisfy the government's interests."[6]

Each Plaintiff was a defendant in a separate criminal state case. All these cases were resolved by the end of 2022:

---

[2] *U.S. Parole Commission v. Geraghty*, 455 U.S. 388, 404 (1980).

[3] Background taken from the Plaintiffs Second Amended Complaint, docket no. 56, filed September 27, 2022.

[4] *Id.* at 2.

[5] *Id.* at 2.

[6] *Id.* (In support, Plaintiffs cite a typical Order to Hold with Bail which was limited to the following statement: "Based on the affirmation of Justin Byce, the affecting officer, the undersigned magistrate finds that probable cause existed for the arrest without a warrant of Dawn Hepikiya Medina. Dawn Hepikiya Medina may post bail in the amount of $7,000." (*Id.* at 3)).

- Plaintiff Luke Lewis was arrested on September 28, 2021. The next day bail was set at $10,000.00 which Lewis could not afford. Lewis' case was resolved on July 21, 2022.

- Plaintiff Justin Horton was arrested on September 28, 2021. The same day bail was set at $5,000.00 which Horton could not afford. Horton was the primary caretaker for his elderly grandparents. Horton's case was resolved on January 24, 2022.

- Plaintiff Madelaine Thompson was arrested on September 29, 2021. Bail was set at $3,000.00, an amount that Thompson could not afford. Thompson had mental health issues which prevented her employment. Her case was resolved on February 7, 2022.

- Plaintiff Dawn Medina was arrested on September 30, 2021. The same day, bail was set at $7,000.00, an amount she could not afford. Medina cares for her two minor children. Her case was resolved on October 18, 2021.

- Plaintiff Marco Hernandez was arrested on September 30, 2021. The next day bail was set at $10,000.00, an amount that Hernandez could not afford. Hernandez has a minor son and works several different jobs. His case was resolved on November 4, 2021.

- Plaintiff Denise Beierle was arrested on September 1, 2022. Bail was set at $500, an amount she could not afford. Beierle is disabled with a variety of mental health conditions. Her case was resolved on October 3, 2022.

The Plaintiffs sought retrospective relief for the harms attendant to their prolonged detention as well as prospective declaratory relief to prevent future harms. Additionally, Plaintiffs, as Representatives, sought class certification on behalf of "all people who are or will be detained in the Beaver, Carbon, or Iron County jails because they are unable to pay a financial

condition of release."[7] On behalf of themselves and class members, Plaintiffs sought the following relief:[8]

>   A. A declaration that Defendants violated and are violating Named Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without inquiry into ability to pay and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest;
>   B. A declaration that Defendants violated and are violating Named Plaintiffs' and class members' right to procedural due process under Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interest; [and]
>   C. A declaration that Defendants violate Plaintiffs' and class members' right to counsel under the Sixth Amendment by failing to provide counsel to indigent people at an individualized bail determination hearing[.]

The Judges filed a Motion to Dismiss[9] which was granted.[10] The dismissal order determined that the Plaintiffs' personal claims for retrospective relief against the Judges were barred by Eleventh Amendment sovereign immunity. The dismissal order also concluded that the Plaintiffs lacked standing on their claims for prospective relief because pretrial detention was, as to them, not currently a threat nor an immediate future threat and there was no continuing injury. Even though the dismissal order noted that "the Class Members' request for prospective declaratory relief" "can go forward,"[11] the entire case was dismissed.[12]

## Tenth Circuit Appeal

---

[7] *Id.* at ¶ 78.

[8] Second Amended Complaint at 27-28. The pleadings do not mention a claim for injunctive relief, so this order will consider only declaratory relief.

[9] Defendants' Motion to Dismiss and Memorandum in Support Thereof, docket no. 29, filed March 4, 2022.

[10] Memorandum Decision and Order Granting Defendants' Motion to Dismiss ("Dismissal Order") at 12, docket no. 64, filed March 31, 2023.

[11] *Id.* at 13.

[12] *Id.* at 22.

Plaintiffs appealed the dismissal order and on March 8, 2024, the Tenth Circuit Court of Appeals confirmed that the district court properly dismissed the named Plaintiffs' claims.[13] But the Tenth Circuit held that "[b]ecause an uncertified class asserts the only claims at issue in this action, we lack appellate jurisdiction. And the district court's jurisdiction over these claims extends only as far as the class-certification motion."[14] The Tenth Circuit remanded the case back to the district court to decide the class certification motion.[15]

### III. LEGAL STANDARD

Federal class certification requires that four initial conditions be met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[16] These requirements are generally referred to as numerosity, commonality, typicality, and adequacy. Certification is only appropriate "if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."[17]

In addition to the above requirements, the case must meet at least one of the three criteria listed in Fed. R. Civ P. 23(b)[18]: (1) the potential for prosecuting separate actions would create a risk of inconsistent adjudications with respect to individual class members, (2) the grounds for the damages apply generally to the class so that final relief is appropriate to the class as a whole, or (3) the questions of law or fact common to the class predominate over questions affecting only

---

[13] *Medina v. Allen*, No. 23-4057, 2024 WL 1006791 (10th Cir. March 8, 2024).

[14] *Medina v. Allen*, 2024 WL 1006791 at *3.

[15] *Id.*

[16] Fed. R. C. P. 23(a).

[17] *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

[18] *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

individuals. Plaintiffs are bringing their claims under the second Rule 23(b) requirement—they claim generally applicable grounds for injury and are seeking declaratory relief that will apply to the class as a whole.[19]

For purposes of class certification, a court must accept all substantive allegations in the Complaint as true.[20] However, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or Representatives have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[21] A court may consider merit questions "to the extent […] that they are relevant to determining whether the Rule 23 prerequisites of class certification are satisfied."[22]

## IV.  DISCUSSION

### A.  The Effect of H.B. 2003 on Plaintiffs' Motion

A significant issue on the class certification motion[23] is the effect of recent Utah legislation amending pre-conviction bail procedures. This legislation, H.B. 2003, was adopted on November 16, 2021, after the Plaintiffs filed their initial complaint on October 4, 2021. It requires that probable cause statements submitted by law enforcement officers include information about the defendant's known financial circumstances, including an individual's employment and income, the support they provide, any dependents they have, and any expenses

---

[19] Plaintiffs' Amended Motion for Class Certification, docket no. 9, page 5, filed October 5, 2021.

[20] *Shook v. El Paso City*, 386 F.3d 963, 968 (10th Cir. 2004).

[21] *Id*. at 971 (quoting *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982)).

[22] *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

[23] Plaintiffs' Amended Motion for Class Certification ("Motion"), docket no 9, filed October 5, 2021; Defendants' Memorandum in Opposition to Plaintiffs' Amended Motion for Class Certification ("Opposition"), docket no 82, filed May 10, 2024; Reply in Support of Motion for Class Certification ("Reply"), docket no. 90, filed June 14, 2024.

they have.[24] The relevant portion of H.B. 2003, defining procedures to gather this required financial information, is as follows:

> When an individual is arrested without a warrant for an offense and booked at a jail facility, an employee at the jail facility, or an employee of the pretrial services program, shall submit the following information to the court with the probable cause statement…
>
> (f) the individual's financial circumstances to the best of the individual's knowledge at the time of booking, including
> (i)     The individual's current employer
> (ii)    The individual's monthly income, including any alimony or child support that contributes to the individual's monthly income;
> (iii)   The individual's monthly expenses, including any alimony or child support obligation that the individual is responsible for paying;
> (iv)    The individual's ownership of, or any interest in, personal or real property, including any savings or checking accounts or cash, the number, ages, and relationships of any dependents;
> (v)     Any financial support or benefit that the individual receives from a state or federal government; and
> (vi)    Any other information about the individual's financial circumstances that may be relevant.

The Judges argue that the new law moots not just the Plaintiffs' claims but their ability to certify a class, reasoning that the new law essentially creates an entirely different cause of action for prospective class members who claim their rights have been violated.[25] The Plaintiffs contend that deficiencies in process and associated harms are continuing despite the enactment of the new law, and therefore the claims of the prospective class members survive.[26] They also contend that their complaint extends beyond the lack of inquiry into their financial circumstances, and also includes the lack of counsel afforded those detained individuals during their detainment and at their bail hearing, and the lack of consideration into non-financial alternatives for pre-trial release.

---

[24] Utah Code 70-20-202 (1)(f), "Collection of pre-trial information."

[25] Opposition at 7-8.

[26] Reply at 1-2.  *See also* Reply at 13 (pointing out the lack of inquiry into Plaintiff Denise Beirele's financial means to pay bail even after the enactment of H.B. 2003).

As previously stated in the dismissal order, "an edited statute resolving one of a handful of grievances does not a moot a case."[27] Therefore, H.B. 2003 is considered only as to its effect on the requirements of Rule 23 and whether the Plaintiffs have fulfilled the prerequisites for class certification.

### B. Class Definition

As an initial matter, it is helpful to have a concretely and consistently defined class for purposes of class certification analysis. The Judges have claimed that Plaintiffs' proposed class definition lacks specificity and clarity[28] and that the class is therefore unascertainable for purposes of defining class membership or meeting numerosity requirements. Ascertainability is not, however, a requirement in Rule 23(b)(2) claims where declaratory relief is being sought and the class membership is somewhat fluid.[29] But it is true that Plaintiffs' class definition has gone through several iterations throughout the briefings, and for purposes of manageability[30] it requires some practical modifications.

> In their Amended Complaint, the Plaintiffs defined their proposed class as:
>
> All people who are or will be detained in the Beaver, Carbon, or Iron County jails because they are unable to pay a financial condition of release.[31]
>
> The Motion for Class Certification has a slightly different class definition:
>
> All people who are or will be detained in the Beaver, Carbon, Iron, and Utah County jails because they are unable to pay a secured financial condition of release.[32]

---

[27] Dismissal Order at 12.

[28] Opposition at 8.

[29] *Shook v. El Paso County,* 386 F.3d 963, 972 (2004) "[C]ourts have found Rule 23(b)(2) well suited for cases where the class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population."

[30] *Id*. ("[W]e are not persuaded that manageability is never a proper inquiry under Rule 23(b)(2).")

[31] Second Amended Complaint ¶ 78.

[32] Motion at 5.

However, this proposed class definition inadequately connects proposed class members to the claims made on their behalf. The basis for the Plaintiffs' claims is a lack of individualized process and procedure to determine if bail is necessary and what amount is appropriate, in light of the financial circumstances of each detained person.

The Plaintiffs' Reply essentially repeats[33] the Motion definition but also offers an additional element:[34]

> There are four criteria to the plaintiff class definition:
> 1. persons detained in the county jails of Beaver, Carbon, Iron, and Utah [counties];
> 2. the persons have been assigned secured financial conditions of release;
> 3. *the secured financial condition of release was assigned without consideration of the person's ability to pay;* and
> 4. the persons remain in the custody of the county jail because the persons cannot pay.

This most recent class definition, with the new third element, more accurately defines the scope of the class to those individuals who have been harmed because they were denied a constitutional process. This critical factor is evident in Plaintiffs' reasoning. They say that they are not challenging the authority of the Judges' ability to conduct individualized analysis and assign individualized procedures, but that they "challenge the Judges' *failure* to conduct a sufficiently individualized procedure."[35] Because the lack of procedure is the focus of their allegations, it is properly included in the class definition. However, even this improved definition is insufficiently precise or objective for purposes of manageability or administrative feasibility (though these principles are not absolutely required for Rule 23(b)(2) cases). The following modification to the Plaintiffs' class definition makes it workable:[36]

---

[33] Reply at 18.

[34] Reply at 6 (emphasis added).

[35] *Id.* at 11 (emphasis added).

[36] See *Buffin v. City and County of San Francisco,* 2018 WL 1070892. In this case, the court proposed a modification to the definition of a class in response to issues brought by both parties and participated in the construction of a final class definition.

(1) Persons detained in the county jails of Beaver, Carbon, Iron, and Utah from the date of the filing of the Complaint until the resolution of this case;

(2) The persons have been assigned secured financial conditions of release;

(3) The secured financial conditions of release were assigned *without presentation of* information of the person's ability to pay; and

(4) The persons remain in custody of the county jail and were found indigent.[37]

The advantage of this definition is that it will be more ascertainable from the record.[38] "Consideration" of financial circumstances (used by the Plaintiffs) requires inquiry into judicial reasoning, but "presentation" of financial information will be evident from the record. Even if there are other difficulties in ascertaining class membership under this definition,[39] these difficulties do not preclude class certification in a Rule 23(b)(2) case which is not seeking individualized remedies for each class member.[40]

### C. Rule 23(a) Requirements

**1. Numerosity**

The first requirement of Rule 23(a) is that the "class is so numerous that joinder of all members is impracticable."[41] This requirement of numerosity hinges not so much on the specific number of individuals in a class, but that "the plaintiff will suffer strong litigation hardship or

---

[37] This refers to those individuals who qualify for a public defender.

[38] See *Odonnell v. Harris County Texas*, 2017 WL 1542457. The court amended the class definition to include terms that are readily ascertainable from the record. "Those who cannot pay because of indigence will be objectively and readily identifiable from the affidavits of financial ability to post bond[.]"

[39] The Plaintiffs claim that court records could be easily used to ascertain class membership by initially narrowing it down to those who are assigned bail and qualify for a public defender.

[40] *Shook v. El Paso Cnty.*, 386 F.3d 963, 972-973 (10th Cir. 2004) ("Elements of manageability and efficiency are not categorically precluded in determining whether to certify a 23(b)(2) class. While Rule (b)(2) classes for injunctive relief are usually easier to manage than damage class actions, courts also need to look to whether the class is amenable to uniform group remedies.")

[41] Fed. R. Civ. P. 23(a)(1).

inconvenience if joinder is required."[42] When determining if the threshold for numerosity has been met, "[t]he burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable."[43] To substantiate their claims, "[p]laintiffs must offer 'some evidence of established ascertainable numbers constituting the class,' but there is no 'set formula to determine if the class is so numerous that it should be so certified.'"[44] In fact, "the exact number of potential members need not be shown, and a court may make 'common sense assumptions' to support a finding that joinder would be impracticable."[45]

Impracticability of joinder is determined "upon the circumstances surrounding the case"[46] and includes such factors as the size of the proposed class, geographical dispersion, judicial economy and the relative financial resources of the class members.[47]

The proposed class meets the numerosity requirement because (1) the estimated number of people in the class equals or exceeds what courts have found viable for certification in the past,[48] (2) there is an indeterminate future stream of class members who will continue to suffer the same alleged injury without redress,[49] (3) class members are not in a position to investigate

---

[42] *Anderson Living Tr. V. WPX Energy Prod.*, LLC, 306 F.R.D. 312, 380 (D. New Mexico 2014) (quoting *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 384 (D. Colo. 1993)).

[43] *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.,* 765 F.3d 1205, 1214 (10th Cir. 2014) (quoting *Peterson v. Okla. City Hous. Auth*., 545 F.2d 1270, 1273 (10th Cir. 1976)).

[44] *Id*. at 1215 (quoting *Rex v. Owens ex rel Okla*., 585 F.2d 432, 436 (10th Cir. 1978)).

[45] *Anderson* at 380 (quoting *Neiberger v. Hawkins,* 208 F.R.D. 301, 3101 (D. Colo. 2002)).

[46] *Horn v. Associated Wholesale Grocers Inc.,* 555 F.2d 270, 276 (10th Cir. 1977) (quoting *Senter v. General Motos Corp*., 532 F.2d 511, 523 n. 24 (1976)).

[47] See *Yazzie v. Ray Vickers' Special Cars, Inc.,* 180 F.R.D. 411, 415 (D.N.M. 1998).

[48] See *Rex v. Owens ex rel. State of Okla*., 585 F.2d 432, 436 (10th Cir. 1978) ("class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class").

[49] See G*erstein v. Pugh*, 420 U.S. 103, 111 ("It is by no means certain that any given individual, named as plaintiff, would be in pre-trial custody long enough for a district judge to certify the class. Moreover, in this case the *constant* existence of a class of persons suffering the deprivation is certain")(emphasis added).

or pursue their legal claims or to find legal representation,[50] and (4) judicial economy favors class certification.[51]

Although the Judges acknowledged that "a significant number of pre-trial detainees come through the Subject Counties each year,"[52] they argue that the Plaintiffs have provided little to no evidence of numerosity for class certification. However, Plaintiffs have shown evidence that during a 2-week period leading up to the filing of their Complaint, 28 people were detained in the named counties without the required constitutional procedures or legal representation at their bail hearings.[53] If roughly two individuals each day are detained and assigned bail without any inquiry or presentment of their financial circumstances, then within a one-month period, there would be 60 additional class members. Plaintiffs have also demonstrated that the new statute, H.B. 2003, is not a cure-all, despite the Judges' claim that the new law renders class certification unnecessary because it provides the relief requested by the Plaintiffs.[54] Plaintiffs seek for much more than H.B. 2003 can provide and have alleged at least one instance in which named plaintiff Denise Bieriele was detained in spite of her financial circumstances even *after* the enactment of the new law.[55]

---

[50] See *Colo. Cross-Disability Coal v. Taco Bell Corp.,* 184 F.R.D. 354, 359 (D. Colo. 1999) (finding impracticability of joinder is met when the economic circumstances of many of the class members prohibits them from pursing individual claims).

[51] *See Harlow v. Sprint Nextel Corp.*, 254 F.R.D. 418, 423 (D. Kan 2008) (finding that class certification would save the courts from inefficient, costly, and "unnecessarily duplicative litigation").

[52] Opposition at 11.

[53] Amended Motion for Class Certification at 8.

[54] Opposition at 7.

[55] Plaintiffs argue in their Reply at 13, that "the passage of H.B. 2003 is likewise irrelevant to [numerosity] analysis because Judges' challenged conduct remains the same before or after the passage of H.B. 2003 and Denise Beierle is representative of the post-H.B. modified procedures."

To further bolster their argument, the Plaintiffs present a 2017 performance audit wherein 8,172 individuals in 2015 resorted to surety bonds to cover the bail set for them.[56] This is indicative of the general level of indigency of many of the pre-trial arrestees in the State of Utah. Common sense assumptions may be made about the number of arrested individuals who are brought before judges, with no individualized bail hearing, with no presentment of financial information, who are thereafter unable to pay the bail amount set for them. And as these are among the most economically disadvantaged members of the community, they are less likely to have the means to bring their own legal claims for constitutional violations absent a class certification.

Numerosity has been satisfied.

**2. Commonality**

The second requirement for 23(a) class certification is that "there are questions of law or fact common to the class"[57] Commonality springs from plaintiffs suffering the same injury and thereby seeking redress together.[58] "[P]laintiffs must show their claims rely on a 'common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"[59] The purpose of the requirement of commonality is for a plaintiff to show "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."[60]

---

[56] Reply at 15 (citing 2017 Performance Audit of Utah's Monetary Bail System).

[57] Fed. R. Civ. P. 23(a)(2).

[58] Wal-mart Stores, Inc., v. Dukes, 564 U.S. 338, 350 (2011).

[59] *Sherman v. Trinity Teen Sols., Inc.,* 84 F.4th 1182, 1192 (10th Cir. 2023) (quoting *Dukes* at 350).

[60] *Sherman* at 1192 (citations omitted).

The Judges claim that commonality cannot possibly be met because H.B. 2003 makes the Plaintiffs' questions and claims irrelevant; there are too many factual disparities among class members; and there are no common answers to their questions.[61] However, these arguments are not dispositive. Plaintiffs may come from a wide variety of circumstances as long as the commonality stems from the same harm or deprivation of rights. And Plaintiffs need not have all their questions of law or fact in common, just some issues of significance.[62]

As identified by Plaintiffs, common questions of fact include "whether Judges implement their post arrest detention scheme without consideration of ability to pay, without findings as to ability to pay, and without consideration of non-financial conditions."[63] Common questions of law include "whether the Judges' wealth based post-arrest detention scheme, which requires that arrested people pay money upfront to be released and which does not consider ability to pay or non-financial conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection Clause."[64] H.B. 2003 does not and cannot answer all the Plaintiffs' questions. Significant questions remain to be answered that tie the Plaintiffs and their class together.

Additionally, Plaintiff's requested relief is identical for themselves and for class members:

> A. A declaration that Defendants violated and are violating Named Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without inquiry into ability to pay and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest;
> B. A declaration that Defendants violated and are violating Named Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice,

---

[61] Opposition at 14.

[62] *See Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.,* 183 F.R.D. 687, 691 (D. Colo. 1998).

[63] Second Amended Complaint ¶ 85.

[64] *Id.* ¶ 86.

counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests; [and]

    C. A declaration that Defendants violate Plaintiffs' and class members' right to counsel under the Sixth Amendment by failing to provide counsel to indigent people at an individualized bail determination hearing[.][65]

The questions posed by the Plaintiffs as well as the relief requested make clear that the theoretical impositions of H.B. 2003 do not satisfactorily ensure compliance with the process. Commonality is present.

### 3. Typicality

The third requirement of Rule 23(a) is that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."[66] Typicality and Commonality often have overlapping considerations. They both determine "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[67] Typicality does not require uniformity, but it "exists where…all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[68]

The Judges argue that the Plaintiffs' claims are based only upon "their unique pre-trial detentions, [and] are no longer typical of the current pretrial detention procedure."[69] Plaintiffs, however, have provided evidence of six Orders to Hold with Bail that are remarkably similar in

---

[65] Second Amended Complaint at 27-28.

[66] Fed. R. Civ. P. 23(a)(3).

[67] *General Telephone Company Of the Southwest v. Falcon,* 457 U.S. 147, footnote 13 (1982).

[68] *Stricklin* at 1199.

[69] Opposition at 19.

content and effect for each Plaintiff, including one entered *after* H.B. 2003.[70] Plaintiffs and their proposed class satisfy the typicality element because the members of the Proposed Class all suffered the same injury and are alleging the same claims. By definition, before or after the passage of H.B. 2003, class members were assigned financial conditions of release without presentation of financial information, were found indigent, and remained in detention when they could not pay the amount required. Plaintiffs claim the same harm. And despite the divergence in circumstances or alleged crimes or even the extent of particular injury suffered by any individual class member or plaintiff, their claims all stem from the same absence of practice or procedure, which includes not just an inquiry into financial circumstances, but representation at individualized bail hearings, findings concerning the necessity of detention, and consideration of alternative conditions of release. New laws do not necessarily make new practices, nor do they solve all existing issues.

The claims of the Plaintiffs are sufficiently typical of the class they seek to represent.

### 4. Adequacy

The fourth and final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."[71] Adequacy is encompassed by two principal questions—whether the plaintiffs and their counsel have any conflict of interests with class members and whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of class members.[72]

The Judges argue there is a conflict of interest between the named Plaintiffs and class members based on their assertion that the Plaintiffs' claims are without merit and therefore

---

[70] Amended Complaint at 7-13.
[71] Fed. R. Civ. P. 23(a)(4).
[72] *Rutter &Wilbanks Corp., v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 1975).

16

representation by those Plaintiffs is not in the interest of proposed class members.[73] But the purpose of the adequacy inquiry is not to determine the merit of Plaintiffs' claims, but rather to determine whether the Plaintiffs are adequate representatives for absent class members. Accepting the Plaintiffs' allegations as true,[74] the Plaintiffs experienced the very deprivations that they allege are ongoing in the subject counties. At this point, there is no one who can better represent their interests because no one else is fighting to represent them. Without class certification, prospective class members would have no one pursuing their interests at all, and because of their indigency would be unlikely to bring their own claims. And because of the relatively short-lived nature of these pre-trial detentions, most class members would be shifting from seeking prospective relief to seeking retrospective relief before their class action claim would be resolved. Where class members are, the Plaintiffs once were, and where the Plaintiffs are, class members will arrive.

Finally, there is no question that the Plaintiffs and their attorneys have been and are vigorously pursuing their claims. The long-term commitment of Plaintiffs' counsel as well as their extensive briefing all provide support as to the adequacy of their representation. The Plaintiffs and their counsel meet the adequacy requirement.

### D. Rule 23(b)(2)

The Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(2) which requires that the party seeking class certification must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This requirement demands

---

[73] Opposition at 22.

[74] See *Stricklin* at 1197 ("Despite Defendants' repeated suggestion otherwise, at the class certification stage Named Plaintiffs do not bear the burden of proving the veracity of their complaints' allegations.").

cohesiveness among the class both as to the injuries suffered and the relief requested.[75] Civil rights cases seeking injunctive or declaratory relief are primary examples of the kind of cases that satisfy this requirement[76] as in this case where Plaintiffs are not seeking individual monetary remedies for damages, but declaratory relief that would be applicable to the class as a whole.

Though every member of the class as proposed has widely varying circumstances, the claims that form the basis for Plaintiffs' complaint are consistent across class members, which is that there is an absence of constitutionally required procedures in bail hearings which results in unnecessarily prolonged detentions for the indigent. Plaintiffs' requested declaratory relief is also identical for themselves and for class members [77] and would apply universally to those challenging the allegedly unconstitutional practices.  The fluidity of the class composition likewise does not pose an obstacle to certification in a Rule 32(b)(2) class action claim.[78]

Rule 23(b)(2) is satisfied.

### E.      Rule 23(g)

Federal Rule of Civil Procedure 23(g) states that a court that certifies a class must appoint class counsel, and in so doing must consider counsels' work, experience, and knowledge with regards to class action litigation and the applicable law and must also consider the resources counsel will commit toward representation.  Counsel for the Plaintiffs have shown a high degree of commitment towards the Plaintiffs and furthering their legal interests, and further have shown themselves both experienced and greatly competent with respect to class action claims.

---

[75] *Id.* at 1199-1200.

[76] See *Dukes* at 361.

[77] Second Amended Complaint at 27-28.

[78] See Odonnell, 2017 WL 1542457, "The fact that members will flow in and out of the class as they are arrested and released, or as they acquire or lose the means to pay a secured financial condition of release does not pose an obstacle to class certification.  Indeed, the Rule 23(b)(2) is the paradigm vehicle for addressing transient claims that are capable of repetition yet evading review."

Plaintiffs' counsel are appointed as class counsel.

## V.     ORDER

IT IS HEREBY ORDERED that the following class is certified with Plaintiffs as class representatives and Plaintiffs' counsel as class counsel.[79]

> Persons detained in the county jails of Beaver, Carbon, Iron, and Utah from the date of the filing of the Complaint to the resolution of this case; who were assigned secured financial conditions of release; which secured financial conditions of release were assigned without presentation of information of the person's ability to pay; and the persons remained in custody of the county jail and were found indigent.[80]

With the class certification issue now resolved, it is now possible for Defendants to test whether class members' claims are viable for adjudication.

Signed December 19, 2024.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[79] Fed. R. Civ. P. 23(g).

[80] This refers to those individuals who qualify for a public defender.