THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAWN HEPIKIYA MEDINA, JUSTIN HORTON, MADELAINE THOMPSON, LUKE MELVIN LEWIS, MARCOS HERNANDEZ, DENISE ANN BEIERLE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HON. ANN MARIE MCIFF ALLEN, THE HON. JEREMIAH HUMES, THE HON. CHRISTINE JOHNSON, THE HON. THOMAS LOW, and THE HON. MATTHEW BELL, in their official capacities,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 4:21-cv-00102-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Defendants Judge Ann Marie McIff Allen, Judge Jeremiah Humes, Judge Christine Johnson, Judge Thomas Low, and Judge Matthew Bell (collectively, "Defendants" or "the Judges") filed their Second Motion to Dismiss ("Motion") on January 24, 2025.[1] They seek to dismiss Plaintiffs' Second Amended Complaint,[2] filed September 27, 2022, with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).[3] Briefing by the parties followed.

---

[1] Defendants' Second Motion to Dismiss and Memorandum in Support Thereof ("Motion"), docket no. 108, filed January 24, 2025.

[2] Second Amended Complaint, docket no. 56, filed September 27, 2022.

[3] Motion at 1.

Plaintiffs filed a Memorandum in Opposition on March 10, 2025,[4] and Defendants filed their Reply on April 1, 2025.[5] After careful review of the parties' briefing, the Defendants' Motion[6] is GRANTED.

Defendant Judge Ann Marie McIff Allen filed an earlier, separate Motion to Dismiss on May 17, 2024 ("Motion to Dismiss Judge Allen") seeking dismissal with prejudice because she is no longer a state judge.[7] This argument was re-asserted in Defendants' Second Motion to Dismiss.[8] Briefing by the parties followed; Plaintiffs filed their Opposition on June 14, 2024;[9] and Defendants filed their Reply in support of the Motion to Dismiss Judge Allen on June 28, 2024.[10] Plaintiffs filed two sur-replies, both filed July 19, 2024.[11] After careful review of the parties' briefing, the Motion to Dismiss Judge Allen[12] is GRANTED.

---

[4] Plaintiffs' Memorandum in Opposition to Defendants' Second Motion to Dismiss ("Opposition"), docket no. 113, filed Mar. 10, 2025. The first motion to dismiss was filed by the Judges before an appeal was taken. *See* page 4, infra.

[5] Defendants' Reply Memorandum in Support of their Second Motion to Dismiss ("Reply"), docket no. 117, filed Apr. 1, 2025.

[6] Docket no. 108.

[7] Defendants' [sic] Motion to Dismiss the Hon. Anne [sic] Marie McIff Allen ("Judge Allen's Motion to Dismiss"), docket no. 84, at 1, filed May 17, 2024.

[8] Motion at 16.

[9] Plaintiffs' Opposition to Defendants' [sic] Motion to Dismiss the Honorable Anne [sic] Marie McIff Allen ("Opposition to Judge Allen's Motion to Dismiss"), docket no. 88, filed June 14, 2024.

[10] Defendants' [sic] Reply Memorandum in Support of Motion to Dismiss the Hon. Anne [sic] Marie McIff Allen ("Reply in Support of Motion to Dismiss Judge Allen"), docket no. 93, filed June 28, 2024.

[11] Plaintiffs' Sur-Reply to Defendants' Motion to Dismiss the Hon. Anne [sic] Marie McIff Allen (collectively referred to as "Sur-Replies"), docket nos. 98 and 100, filed July 19, 2024.

[12] Docket no. 84.

## TABLE OF CONTENTS

A.    BACKGROUND ............................................................................................................ 3
      1.    First Motion to Dismiss ................................................................................. 5
      2.    Tenth Circuit Appeal ..................................................................................... 6
      3.    Second Motion to Dismiss and Motion to Dismiss Judge Allen .......................... 6
B.    STANDARD OF REVIEW ........................................................................................... 7
C.    JURISDICTION ........................................................................................................... 8
D.    THE FOURTEENTH AMENDMENT CLAIM FAILS ................................................. 9
      1.    The Due Process Claim Fails ......................................................................... 9
            a.    Procedural Due Process ..................................................................... 10
            b.    Substantive Due Process ................................................................... 15
      2.    The Equal Protection Claim Fails ................................................................. 18
E.    THE SIXTH AMENDMENT CLAIM FAILS ............................................................. 19
F.    MOTION TO DISMISS JUDGE ALLEN ................................................................... 22
G.    ORDER ...................................................................................................................... 22

## A.  BACKGROUND

Six individuals ("the Named Plaintiffs"[13]), and on behalf all others similarly situated (the "Class Members"[14] and "Plaintiffs"[15] to collectively designate Named Plaintiffs and Class Members), brought claims alleging that their constitutional rights were violated after they were arrested and held in custody on the sole condition of posting a monetary bail amount.[16] And because they could not afford to bail out, they remained in custody "until at least their initial appearances . . . . [which could be] anywhere from a few days to more than a week for their initial appearance."[17] Plaintiffs argue that these delays resulted in their prolonged detention, affecting their lives by separating them from their family and impacting their employment.

---

[13] Second Amended Complaint, 5, ¶¶ 3-9, docket no. 56, filed September 27, 2022.

[14] *Id.* at 20, ¶¶ 74, 76.

[15] Opposition at 3, ¶ 1 ("Plaintiffs are a certified Class.").

[16] *Id.* at 2.

[17] *Id.* at 4, ¶¶ 9–10.

"Even a few days in jail significantly increases the risk of job loss, eviction from housing or homeless shelter, exposure to trauma in custody, and impaired family connections."[18]

In their Second Amended Complaint, Plaintiffs allege two causes of action: (1) Defendants' have violated Plaintiffs' constitutional rights under the Fourteenth Amendment's equal protection and due process clauses by failing to inquire into and make findings concerning the Plaintiff's ability to pay at a hearing where Plaintiffs are given individualized release hearings with notice, representation by counsel, and an opportunity to present evidence; and, (2) Defendants have violated Plaintiffs' Sixth Amendment right to counsel by failing to provide counsel during Defendants' decision regarding bail and during the initial "first appearance" (hereinafter referred to as the "Initial Appearance").[19] Plaintiffs assert that during this process those "who cannot afford private counsel are not appointed counsel during the initial period of detention, and no lawyer appears with them at the Initial Appearance" and therefore this practice "violate[s] the Sixth Amendment by imposing de facto orders of detention."[20]

Utah's pretrial bail procedures begin with an initial, temporary bail determination ("Initial Bail Determination"), which is not a hearing and not an adversarial proceeding; neither the arrestee nor the prosecutor are present.[21] Within 24 hours,[22] during the Initial Bail Determination, a magistrate or judge reviews pretrial information collected at the time of booking and issues a "temporary pretrial status order."[23] The Temporary Pretrial Status Order

---

[18] *Id.* at 19, ¶ 71.

[19] Second Amended Complaint at 25–27; s*ee also* Utah Code Ann. §77-20-205(1); *see also* Utah R. Crim. P. 7(a).

[20] *Id.* at 2, 26–27, ¶¶ 99–103.

[21] Utah Code Ann. §77-20-205(1).

[22] Utah R. Crim. P. 9(a)(1), (c)(1) ("Unless the time is extended at 24 hours after booking, if no probable cause determination and pretrial status order have been received by the custodial authority, the defendant must be released on the arrested charges on recognizance.").

[23] Utah Code Ann. §77-20-205(1).

either: (1) releases the arrestee on their own recognizance, (2) designates conditions for release, or (3) orders continued detention.[24] However, that Initial Bail Determination is temporary and may be overridden by a subsequent pre-trial status order issued during an arrestee's Initial Appearance, for which the magistrate or judge "may not give any deference to a magistrate's decision in a Temporary Pretrial Status Order."[25] In Utah, an arrestee is afforded all of the hallmarks of due process at their Initial Appearance—notice, opportunity to be heard, and right to counsel.[26]

### 1. First Motion to Dismiss

The Judges filed their first Motion to Dismiss on March 4, 2022.[27] After extensive briefing, that First Motion to Dismiss was granted by a Dismissal Order on March 31, 2023.[28] The Dismissal Order determined that the Plaintiffs' personal claims for retrospective relief against the Judges were barred by sovereign immunity under the Eleventh Amendment.[29] The Dismissal Order also concluded that the Plaintiffs lacked standing on their claims for prospective relief because pretrial detention was, as to them, not currently a threat nor an immediate future threat and there was no continuing injury.[30] Even though the Dismissal Order noted that "the Class Members' request for prospective declaratory relief" "can go forward," the entire case was dismissed.[31]

---

[24] Id.

[25] Id. at §77-20-205(2)(b).

[26] Utah R. Crim. P. 7(a)–(b).

[27] Defendant's Motion to Dismiss and Memorandum in Support Thereof ("First Motion to Dismiss"), docket no. 29, filed March 4, 2022.

[28] Memorandum Decision and Order Granting Defendants' Motion to Dismiss ("Dismissal Order"), docket no. 64, entered March 31, 2023.

[29] Id. at 12–13.

[30] Id. at 9–10.

[31] Id. at 13.

### 2. *Tenth Circuit Appeal*

The Named Plaintiffs appealed the dismissal order, and on March 8, 2024.[32] The Tenth Circuit concluded that it lacked jurisdiction "[b]ecause an uncertified class asserts the only claims at issue in this action . . . . And the district court's jurisdiction over these claims extends only as far as the class-certification motion."[33] The Tenth Circuit remanded the case "for the district court to consider class certification and for further proceedings as required."[34] Following further briefing on the class-certification motion, the class was certified on December 20, 2024.[35]

### 3. *Second Motion to Dismiss and Motion to Dismiss Judge Allen*

Defendants now seek dismissal of the claims brought on behalf of the Class Members.[36] Specifically, Defendants seek dismissal for failure to state constitutional claims under the Due Process Clause, the Equal Protection Clause, and the Sixth Amendment.[37] The Named Plaintiffs, on behalf of the Class Members argue that dismissal is not proper because they have asserted claims upon which relief can be granted.[38] And Plaintiffs further assert that "recent decisions from district courts in Oklahoma" – *Feltz v. Regalado*[39] and *White v. Hesse*[40]–are persuasive

---

[32] *Medina v. Allen*, No. 23-4057, 2024 WL 1006791 (10th Cir. March 8, 2024).

[33] *Id.* at *3.

[34] *Id.*

[35] Memorandum Decision and Order Granting Plaintiffs' Motion to Certify Class and Memorandum, docket no. 103, filed December 20, 2024.

[36] Motion at 2.

[37] *Id.*

[38] Opposition at 2.

[39] *Feltz v. Regalado*, 751 F. Supp. 3d 1198 (N.D. Okla. 2024).

[40] *White v. Hesse*, No. CIV-19-01145-JD, 2024 WL 5202511 (W.D. Okla. Dec. 23, 2024).

authority that their procedural due process claims should be evaluated under the standard utilized in *Mathews v. Eldridge*[41] as opposed to the standard used in *Gerstein v. Pugh*.[42]

Defendant Judge Allen separately argues that dismissal is appropriate now that she is no longer a state judge, thereby removing any live and ongoing controversy and making the issues against her moot.[43] Both parties agree dismissal of Judge Allen is appropriate now that she is no longer a state judge.[44] However, they disagree whether a new judge should be substituted under Federal Rule of Procedure 25(d).

## B. STANDARD OF REVIEW

Defendants bring their Motion to Dismiss all of the claims brought in Plaintiffs' Second Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[45] "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[46] Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[47] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[48] All well-pleaded factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[49] However, "assertions devoid of factual

---

[41] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[42] *Id.* at 15; *see generally Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

[43] Motion to Dismiss Judge Allen at 5–6.

[44] Motion at 16; *see also* Opposition at 36–37.

[45] Motion at 1, 7.

[46] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 544 (2007)).

[47] Fed. R. Civ. P. 12(b)(6); *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. Mar. 1, 1999).

[48] *Twombly*, 550 U.S. at 570.

[49] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. Nov. 25, 1997).

allegations" that are nothing more than "conclusory" or "formulaic recitation" of the law are disregarded.[50]

## C.  JURISDICTION

Defendants first assert that Plaintiffs' Second Amended Complaint should be dismissed under 12(b)(1) for lack of subject matter jurisdiction.[51] Defendants' Motion renews their arguments that the *Younger Abstention* doctrine applies; that H.B. 2003 mooted Plaintiffs' Due Process and Equal Protection Claims; and that all claims made against Judge Allen are non-redressable.[52]

The first two arguments were decided against Defendants in the Dismissal Order.[53] Plaintiffs argue that Defendants' attempt to raise Younger Abstention and mootness is barred because Defendants' missed the opportunity to cross-appeal.[54] In their Reply, Defendants do not respond.[55] Defendants' briefing before the Tenth Circuit explains that the only issues before the Tenth Circuit were the dismissal of Plaintiffs' "claims on Rule 12(b)(6) grounds," not the denial of the jurisdictional defenses.[56] At no time did Defendants file a timely cross-appeal related to the Dismissal Order's ruling related to the jurisdictional arguments. Yet, they now wish to renew and preserve their previous jurisdictional arguments.[57]

---

[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[51] Motion at 1.

[52] *Id.* at 15–16.

[53] Dismissal Order at 10-12.

[54] Brief of Defendants-Appellees, *Medina, et al. v. Allen, et al*, 2023 WL 7096571, at *16 (10th Cir. Oct. 20, 2023).

[55] *See generally* Reply.

[56] *Id.*

[57] *See generally id.*; *see also* Motion at 15–16.

Since the time to appeal has now passed, and Defendants have not provided a reason for reconsideration, the Dismissal Order on the jurisdictional issues remains in place.

### D.  THE FOURTEENTH AMENDMENT CLAIM FAILS

The Fourteenth Amendment provides that "[n]o State shall…deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."[58] Plaintiffs allege that their due process and equal protection rights were violated because they were incarcerated "without inquiry into and findings concerning ability to pay"; not given notice or an opportunity to be heard during their Initial Bail Determination; and kept in custody because they could not afford to pay their bail amounts.[59]

#### 1.   The Due Process Claim Fails

Plaintiffs allege "violations of [the Class Members] rights to procedural and substantive due process."[60] The Tenth Circuit explains that procedural due process under the Due Process Clause "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision."[61] Substantive due process, "on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision."[62] Neither of the constitutional violations alleged by Plaintiffs in their Second Amended Complaint are present, as discussed in turn below. Thus, Plaintiffs' First Claim for Relief is DISMISSED.

---

[58] U.S. Const. amend. XIV, Section 1.

[59] Second Amended Complaint at 25–26, ¶¶ 96–98.

[60] Opposition at 13; *see also* Second Amended Complaint at 25–26, ¶¶ 96–98.

[61] *Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. June 20, 1991).

[62] *Id.*

a. Procedural Due Process

To properly allege a violation of procedural due process Plaintiffs' Second Amended Complaint must allege facts sufficient to meet a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?"[63] Plaintiffs have met the first requirement but not the second.

First, Plaintiffs claim that "[t]he right at issue here is [an arrestee's] right to pre-trial liberty."[64] A protected liberty interest "may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies."[65] Here, it arises from the Constitution.[66] Both parties agree, and the Motion recites a U.S. Supreme Court case explaining that an arrestee has a "strong interest in liberty," a right of "importance and fundamental nature."[67] Although pretrial liberty is not a fundamental right, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."[68] Ultimately, pretrial liberty is not an absolute fundamental right.

Next, the second inquiry is whether Plaintiffs were, through the procedures employed in Initial Bail Determination, "afforded an appropriate level of process prior to the deprivation of the protected interest" which Plaintiffs have in pretrial liberty.[69] "The Due Process Clause of the

---

[63] *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

[64] Opposition 18; *see also* Second Amended Complaint at 25.

[65] *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005) (explaining that a liberty interest can be "inhere in the Due Process clause or it may be created by state law.").

[66] *United States v. Salerno*, 481 U.S. 739, 750 (1987) (noting that the arrestee has a "strong interest in liberty. . . . [And the U.S. Supreme Court does not] minimize the importance and fundamental nature of this right."); *see also* Motion at 5 (citing , Opposition at 5

[67] *Id.*

[68] *Salerno*, 481 U.S. at 755.

[69] *Hennigh*, 155 F.3d at 1255.

United States Constitution entitles each citizen to notice and an opportunity to be heard prior to the deprivation of a fundamental right."[70] Specifically, Plaintiffs contend in their Second Amended Complaint that Plaintiffs were (1) not given notice of the Initial Bail Determination; (2) not given the right to be heard or present evidence at the Initial Bail Determination; and (3) not given the right to counsel at the Initial Bail Determination.[71] It is safe to conclude Plaintiffs define the "Initial Bail Determination" as the moment when an on-call judge reviews a probable cause statement submitted by a law enforcement officer.[72] Notice and an opportunity to be heard at the Initial Bail Determination is not required by the Constitution.

In the early 1970s, the Southern District of Florida "held that the Fourth and Fourteenth Amendments give all arrested persons charged by information a right to a judicial hearing on the question of probable cause."[73] The Fifth Circuit Court of Appeals affirmed.[74] Both lower courts held "that the determination of probable cause must be accompanied by the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses."[75] The Supreme Court in *Gerstein v. Pugh* corrected this misconception, stating that all of "[t]hese safeguards are not essential for the probable cause determination required by the Fourth Amendment."[76] Rather, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."[77] Probable

---

[70] *Id.* at 1256.

[71] Second Amended Complaint at 19–20, ¶ 73; *see also* Opposition at 14–15.

[72] *See* Second Amended Complaint 2, 14, 19-20; Opposition 24-25.

[73] *Gerstein v. Pugh*, 420 U.S. at 107.

[74] *Id.* at 114.

[75] *Id.* at 119.

[76] *Id.*

[77] *Id.* at 114.

cause can be determined "without an adversary hearing."[78] "That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof."[79] The Supreme Court gave states vast latitude on structuring this probable cause process, saying that "[t]here is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole."[80]

Plaintiffs assert that the appropriate test for examining procedural due process of an arrestee's initial bail hearing is not *Gerstein v. Pugh*, discussed above, but the test provided in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[81] However, *Mathews* is distinguishable from this case because it deals with a three-part balancing test used to determine the level of due process required in administrative proceedings.[82] In *Mathews*, the Supreme Court determined that a recipient of Social Security disability payments was entitled to an evidentiary hearing prior to the termination of those benefits.[83] Termination of benefits by an administrative process is not similar to an Initial Bail Determination in a criminal case. *Gerstein* not *Matthews*, governs whether the current Utah bail system satisfies the Constitution's procedural due process. In fact, in a case decided the year after *Mathews* and two years after *Gerstein*, the Supreme Court

---

[78] *Id.* at 120.

[79] *Id.*

[80] *Id.*

[81] Opposition at 16.

[82] *Mathews*, 424 U.S. at

[83] *Id.* at

decided *U.S. v. Salerno*, which dealt with pretrial detention. *Salerno* utilizes the *Gerstein* analysis; not the *Mathews* three-part analysis.[84]

The Oklahoma district court cases relied on by Plaintiffs,[85] *Feltz v. Regalado* and *White v. Hess*, are distinguishable on their facts. Both involve preconviction bail determinations, but at later stages of the criminal proceedings than at issue here. In *Feltz*, the district court was evaluating the arrestee's challenge to the County's "bond docket appearance," akin to Utah's Initial Appearance, not the probable cause Initial Bail Determination.[86] *White* was also challenging the County's Initial Appearance procedures.[87] Unlike other stages of the process, or the Initial Appearance, notice and an opportunity to be heard at Utah's Initial Bail Determination are not required by the Constitution.

Utah's preconviction bail procedures begin with the Initial Bail Determination, which is not a hearing and not an adversarial proceeding; neither the arrestee nor the prosecutor are present.[88] Within 24 hours of booking the magistrate or judge issues a written Temporary Pretrial Status Order and either: (1) releases the arrestee on their own recognizance, (2) designates conditions for release which may include bail (the Initial Bail Determination), or (3) orders continued detention.[89] An Initial Bail Determination is temporary and may be overridden by a subsequent pre-trial status order issued during an arrestee's Initial Appearance, in which the magistrate or judge "may not give any deference to a magistrate's decision in a Temporary

---

[84] *Salerno*, 481 U.S. at 749 ("The protections . . . far exceed what we found necessary to effect limited postarrest detention in *Gerstein v. Pugh,* 420 U.S. 103 (1975).").

[85] Opposition at 16–17.

[86] *Feltz v. Regalado*, 751 F. Supp. 3d 1198 (N.D. Okla. 2024).

[87] *White v. Hesse*, No. CIV-19-01145-JD, 2024 WL 5202511 (W.D. Okla. Dec. 23, 2024).

[88] Utah Code Ann. §77-20-205(1).

[89] *Id.*

Pretrial Status Order."[90] A Utah arrestee is afforded all of the hallmarks of due process at their first Initial Appearance, including notice, opportunity to be heard, and right to counsel.[91]

This is dissimilar to *Feltz* where the "'bond docket' is the *only* procedure that routinely serves the function of what is commonly called a detention hearing." [92] The detention hearing in *Feltz* also lacked each of the hallmarks of due process.[93] Similarly, in *White*, at issue was a failure to provide notice and an opportunity to be heard at the Initial Appearance, and not the Initial Bail Determination.[94] Ultimately, *Feltz* and *White* are not controlling and distinguishable.

Utah's current bail system satisfies the Constitution's procedural due process requirement as defined in *Gerstein*. In Utah, "[a] person arrested and delivered to a correctional facility without a warrant for an offense must be presented without unnecessary delay before a magistrate for the determination of probable cause and eligibility for pretrial release pursuant to Utah Code § 77-20-205."[95] Separately (and usually earlier), the arresting officer or a prosecutor is required submit an affidavit no later than twenty-four hours after the arrest containing facts supporting their belief that the defendant has committed a crime.[96] The judge is required to determine if probable cause exists and "must determine if the person is eligible for pretrial release…,"[97] in essence, whether they can be released on bail from custody prior to trial, or other resolution of the criminal charges.[98] The "judicial determination" is accomplished

---

[90] *Id.* at §77-20-205(2)(b).

[91] Utah R. Crim. P. 7(a)–(b).

[92] *Feltz*, 751 F. Supp. 3d at 1232.

[93] *Id.*

[94] *White*, 2024 WL 5202511, at *1.

[95] Utah R. Crim. P. 9(a)(1).

[96] *Id.* at 9(a)(2).

[97] *Id.* at 9(a)(4).

[98] Utah Code Ann. § 77-20-102(17).

within twenty-four hours unless the time is extended at 24 hours, of a person being arrested; otherwise the arrestee must, under Rule 9(c)(1) of the Utah Criminal Procedure Code, be released.[99] This practice satisfies the Constitutional requirements.

After the Initial Bail Determination, the Initial Appearance follows with the full constitutional and due process requirements.

### b. Substantive Due Process

Plaintiffs also allege that they were denied substantive due process. In a substantive due process analysis, Plaintiffs must "first defin[e] the type of right at stake"—fundamental or non-fundamental.[100] "Once that baseline is established, the Court applies the level of review that corresponds to the right identified."[101] If a law infringes on a fundamental right, it must be "narrowly tailored to serve a compelling state interest."[102] Otherwise, the government need only show how the law is "rationally related to legitimate government interests."[103]

### i. Non-Fundamental Right

Plaintiffs assert that they "have a fundamental right to pretrial liberty" and that "[n]either the right against wealth-based detention nor the right to pretrial liberty may be infringed unless the government demonstrates that detention is necessary."[104] Plaintiffs fail to show that their right is "objectively, deeply rooted in this Nation's history and tradition."[105] Plaintiffs give no

---

[99] *Id.* at 9(c)(1).

[100] *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, 732 F. App'x 624, 629 (10th Cir. 2018) (internal quotation omitted).

[101] *Id.*

[102] *Reno v. Flores*, 507 U.S. 292, 302 (1993).

[103] *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997).

[104] Opposition at 18–20; Second Amended Complaint at 25, ¶ 96.

[105] *Glucksberg*, 521 U.S. at 721; *see also Salerno*, 481 U.S. at 755 (stating that although pretrial liberty has "important and fundamental nature," "this right may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society.").

such information in their Second Amended Complaint. Their objections to Utah's bail system, though detailed, lack any support from history or precedent.[106]

Historically, courts hearing Fourteenth Amendment claims focus on laws or persons that physically prevent an arrestee from paying their bail. Only when a plaintiff brings an Eighth Amendment "[e]xcessive bail" claim,[107] which prevents bail from being set at "an amount higher than necessary to ensure the appearance of the accused at trial,"[108] can a court entertain affordability argument. For instance, the Tenth Circuit held in *Gaylor v. Does* that a correctional facility unconstitutionally detained an individual for five days by failing to communicate his bail status and that it was set at $1,000.00[109] practically restraining his ability to pay bail. The Tenth Circuit, in *Dodds v. Richardson*, held that a sheriff unconstitutionally detained arrestees when he could not explain why he "prohibited individuals charged with a felony from posting bond until they had been arraigned by a judge and from posting bond after hours."[110] Plaintiffs do not address this issue and make no excessive bail argument.

Although pretrial liberty is important and fundamental, this right may be outweighed by the government's interest and be subordinated to the "greater needs of society."[111] Pretrial liberty is not absolute.

### ii. Rational Basis Review

Rational basis review as applied to a pretrial arrestee requires that a court "decide whether [conditions could be] imposed for the purpose of punishment or whether [they are] but

---

[106] *See* Second Amended Complaint at 14–15, ¶¶ 53-79.

[107] U.S. Const. amend. VIII.

[108] *Meechaicum v. Fountain*, 696 Fdd.2d 790, 791 (10th Cir. 1983).

[109] 105 F.3d 572, 577–78 (10th Cir. 1997).

[110] *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010).

[111] Salerno, 481 U.S. at 755

an incident of some other legitimate governmental purpose…Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."[112] Plaintiffs must explain how their financial "conditions amount[ed] to punishment."[113] Plaintiffs argue that "Defendants' practice of requiring people to pay unattainable amounts of money to secure their release is the equivalent of issuing orders of detention against them, but without any of the substantive findings or procedural safeguards constitutionally required for orders of detention."[114] Therefore, Plaintiffs assert, the requirement of bail is punishment.

The Utah Code says otherwise. The statute states that bail is a right: "[a]n individual charged with, or arrested for, a criminal offense shall be admitted to bail as a matter of right."[115] However, a criminal defendant is not given a chance to "make bail" under Utah Code section 77-20-201 if they are charged with any of the following: (a) a capital felony; (b) a felony committed while on probation; (c) a felony charge if the individual would be a danger to the community or would flee; (d) a felony charge if the individual violated a material condition of release while previously on bail; (e) a domestic violence offence; (f) driving under the influence if a serious bodily injury or death occurred; or (g) a felony charge with evidence that the individual will not appear for future court appearances.[116] An argument that any of the (a)-(g) limitations on bail constituted "punishment" would be more understandable. But Plaintiffs instead complain that

---

[112] *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979); *see also White* 2024 WL 5202511, at *10 (analyzing the substantive due process utilizing the rational basis standard, "the Court must determine whether the infringement of that right is rationally related to a legitimate governmental interest.").

[113] *Id.* at 535.

[114] Second Amended Complaint at 3; *see also id.* at 17, 25, ¶¶ 65, 96, 98.

[115] Utah Code Ann. § 77-20-201(1).

[116] *Id.* at § 77-20-201(1)(a)-(g).

even though they are given the opportunity to bail out of jail, their inability to afford to do so makes bail a punishment. This is not correct.

Additionally, setting a bail amount is just one of twenty-one conditions a magistrate or judge may use in a temporary pretrial status order when they "find there is probable cause to support the individual's arrest under Rule 9 of the Utah Rules of Criminal Procedure."[117] The requirement to "comply with a financial condition"[118]— monetary bail—"means any monetary condition that is imposed to secure an individual's pretrial release."[119] Bail is a means to secure release, not a method to punish.

The statute reflects a rational connection between bail and securing a criminal defendant's appearance in court, which is a legitimate governmental interest. Therefore, Plaintiffs' substantive due process claim fails.

### 2. *The Equal Protection Claim Fails*

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike."[120] Plaintiffs assert that they were treated differently because the only reason Plaintiffs [are] be detained is because they cannot afford to pay the Monetary Bail which Defendants assign with no hearing or individualized consideration."[121] Strict scrutiny would apply[122] only if Plaintiffs show that their right is fundamental or if they demonstrate that

---

[117] *Id.* at §77-20-205(1)(a).

[118] *Id.* at §77-20-205(4)(t).

[119] *Id.* at § 77-20-102(6).

[120] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[121] Opposition at 26.

[122] *Id.*

they are a suspect class.[123] As reasoned above in Part D. 1. B. i. above of this order, Plaintiffs have not pleaded violation of a fundamental right.

Plaintiffs have also not demonstrated their status as a suspect class. The Supreme Court has made it very clear that they "ha[ve] never held that financial need alone identifies a suspect class for purposes of equal protection analysis."[124] Because financial need is the basis for Plaintiffs' equal protection claim, the claim fails.

Because Part D. 1 b. ii. of this order articulates that rational basis review applies, there is no need for additional analysis. Plaintiffs' equal protection claim fails.

## E.  THE SIXTH AMENDMENT CLAIM FAILS

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence (sic)."[125] To determine if the Sixth Amendment's guarantee covers a particular phase of a case, a plaintiff must prove (1) that the right of counsel has attached and (2) that a "'critical stage' of the postattachment (sic) proceedings" has been reached.[126] Plaintiffs' second and final claim alleges that "Defendants violate the Sixth Amendment by imposing de facto orders of detention, and detaining Plaintiffs pursuant to these orders, without providing counsel to assist at required pretrial detention hearings."[127] They argue that counsel is necessary so "[arrestees] can meaningfully challenge their prejudicial detentions and so avoid the prejudice of their unlawful pretrial detentions."[128]

---

[123] *Goetz v. Glickman*, 149 F.3d 1131, 1140 (10th Cir. 1998) (reiterating that the government classification must "jeopardize the exercise of a fundamental right or a suspect class" to be "reviewed under a strict scrutiny standard.").

[124] *Maher v. Roe*, 432 U.S. 464, 471 (1977).

[125] U.S. Const. amend. VI.

[126] *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 211–12 (2008).

[127] Second Amended Complaint ¶ 102.

[128] *Id.* at ¶ 102.

In *Rothgery* the Supreme Court held that "the right to counsel attaches at the initial appearance before a judicial officer"[129] which is "the first formal proceeding against an accused."[130] "Thus, counsel must be appointed *within a reasonable time after attachment* to allow for adequate representation at any critical stage before trial, as well as at trial itself."[131]

In Utah, the right to counsel attaches at "an individual's Initial Appearance before the court"[132] which must take place within three days of a criminal defendant's arrest.[133] The Initial Bail Determination, "which typically occurs within 24 hours"[134] of arrest, does not occur in a formal or adversarial hearing. The Initial Bail Determination is part of a written order to hold a criminal defendant with bail,[135] known as a "temporary pretrial status order," which must be entered if a state judge finds probable cause to support an arrest.[136] Plaintiffs cite no authority that the right to counsel attaches with this temporary pretrial status order. Therefore, the right to counsel does not attach at the Initial Bail Determination stage.

Also, Plaintiffs have not demonstrated how the judge's decision to set bail in a temporary pretrial status order is a "critical stage" of a case. "The cases have defined critical stages as proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or . . . meeting his adversary."[137] Plaintiffs acknowledge that "[t]he

---

[129] *Rothgery*, 554 U.S. at 213.

[130] *McNeil v. Wisconsin*, 501 U.S. 171, 180–81(1991).

[131] *Rothgery*, 554 U.S. at 212 (emphasis added).

[132] Utah Code Ann. § 77-20-205(2)(a); *see also* Utah Code Ann. § 77-20-206(2).

[133] Utah R. Crim. P. 9(a)(1).

[134] Second Amended Complaint at 2,

[135] *Id.* at 2, ¶¶ 15, 24, 29, 34, 42, 48.

[136] Utah Code Ann. § 77-20-205(1)(a).

[137] *Rothgery*, 554 U.S. at 212, n.6.

Initial Bail Determination is a closed proceeding" at which no officer, prosecutor, or criminal defendant is present. Because there is no confrontation, counsel is unnecessary.[138]

Plaintiffs also assert that the Second Motion to Dismiss does "not address Plaintiffs' claim arising from the deprivation of Plaintiffs' right to counsel at the initial appearance."[139] Plaintiffs assert that "effective representation by counsel does not take place until *after* the initial appearance."[140] Plaintiffs argue that the right to counsel should occur before the initial appearance.[141] In support of their Opposition, Plaintiffs attach dockets demonstrating that counsel is appointed at the initial appearance, but not present.[142] This sequence is satisfactory under *Rothgery* and the Sixth Amendment. The Supreme Court explains that "43 States take the first step toward appointing counsel *before, at,* or just after initial appearance. . . . [And those that do not] are a distinct minority."[143] This clearly indicates that the Supreme Court's standard of review is the reasonableness of time in which counsel is appointed.[144] Utah is listed in the 43-state majority, providing counsel at the initial appearance or within a reasonable time after it attaches at the initial appearance.[145]

The Utah criminal procedure for an Initial Bail Determination and the initial appearance without counsel present does not violate the Sixth Amendment. Pursuant to the Utah Criminal Code of Procedure and Utah Code, the right to counsel attaches at the Initial Appearance and

---

[138] *White*, 2024 WL 5202511, at *16.

[139] Opposition at 33.

[140] *Id.* at 34.

[141] *Id.*

[142] *Id.*

[143] *Rothgery*, 554 U.S. at 204 (emphasis added) (internal quotations omitted).

[144] *Id.* at 212.

[145] *Id.* at n.14.

counsel is appointed within a reasonable time (and before the next judicial proceeding). This process in providing counsel does not violate the Sixth Amendment. Plaintiffs Sixth Amendment claim is DISMISSED.

### F.  MOTION TO DISMISS JUDGE ALLEN

Both parties agree that Judge Allen should be dismissed.[146] The disagreement between the parties is whether another judge "should be added to this matter in place of Judge Allen."[147] Dismissal has been granted for other reasons, as stated above, and further discussion of Rule 25 of the Federal Rules of Civil Procedure is unnecessary. Therefore, Judge Allen's Motion to Dismiss is GRANTED.

### G.  ORDER

Defendants' Second Motion to Dismiss[148] is hereby GRANTED, and the clerk is directed to close the action. Defendant Judge Allen's Motion to Dismiss[149] is GRANTED.

Signed July 11, 2025.

BY THE COURT

David Nuffer
United States District Judge

---

[146] Motion to Dismiss Judge Allen at 1; *see generally* Opposition to Motion to Dismiss Judge Allen at 2 (noting Plaintiffs agree that Judge Allen is no longer a state judge and that if substitution of a successor is appropriate; otherwise, dismissal is improper.).

[147] Opposition to Motion to Dismiss Judge Allen at 2; *see also* Sur-Replies at Argument 2–5.

[148] Second Motion to Dismiss, docket no. 108, filed Jan. 24, 2025.

[149] Motion to Dismiss Judge Allen, docket no. 84, filed May 17, 2024.